## WAKEMAN *vs.* GROVER and others.

### VARNUM *vs.* THE SAME.

A judgment creditor, who has exhausted his remedy at law, may file a bill in chancery to obtain satisfaction out of the equitable interests of the debtor, for his own benefit only, without making other creditors, standing in the same situation, parties.

Where a replication is filed, no statement in the answer, not responsive to the bill, can avail the defendant, unless it is established by proof.

Where a bill is filed by a creditor to carry into effect an assignment of the debtor's property, the other creditors provided for in the assignment should be made parties, or the bill should be filed in behalf of the complainant and all others who may choose to come in under the decree.

But where a judgment creditor is acting in hostility to the assignment, it is not necessary for him to make the creditors whose claims are provided for in the assignment parties.

In a suit to set aside an assignment as fraudulent, it is sufficient to make the fraudulent assignors and assignees parties.

Assignees, in trust for creditors, may file a bill in their own names, relative to the trust estate, without making the creditors provided for in the assignment parties.

Whether an assignment by an insolvent partnership, which gives a preference to the creditors of the individual partners over the partnership creditors, is valid? Quære.

An assignment, void in part upon the ground of being against the provisions
of a statute, is void in toto, and no interest passes thereby to the assignees
as against creditors who did not assent to it.

Where an insolvent debtor makes a voluntary assignment of his property to
trustees of his own selection, and excludes in the assignment certain of his
creditors from any participation in the assigned property, unless they con-
sent to take their share of the surplus, after paying certain preferred credit-
ors, and discharge the assignor from all further liability, whether their
debts are paid or not; such assignment is fraudulent and void as against
creditors who do not assent to the same.

If the assignees, under an assignment which is fraudulent in law, pay over
the proceeds of the assigned property to creditors of the assignor, in pursu-
ance thereof, before any other creditors obtain a general or specific lien on
the assigned property, the other creditors cannot compel the assignees to
account to them for such proceeds.

October 22.     THESE were separate and distinct suits, prosecuted by dif-
ferent solicitors; but as they both came before the court at the
same time, related to the same property, and the questions
arising in each were the same, they were considered and de-
cided together.     The bill in the first cause, in which Wake-
man was the complainant, was filed in May, 1828, and the bill
of Varnum was filed a few days thereafter.     The complain-
ants, respectively, were judgment creditors of the defendants
Grover and Gunn, and had issued executions at law against
the property of those defendants, which executions were re-
turned by the sheriff unsatisfied.     And the principal object of
these suits was to reach the proceeds of the property and ef-
fects of Grover and Gunn, in the hands of the other defend-
ants in this cause, on the ground that the assignment under
which the last mentioned defendants claimed to hold such
property and effects, was fraudulent and void as against the
complainants respectively.     It was admitted that Grover and
Gunn, at the date of the assignment, were known to be insol-
vent; that they were indebted to these complainants and oth-
ers between sixty and seventy thousand dollars; and their
property and effects were then estimated to be worth about
$50,000.  On the 6th of July, 1826, Grover and Gunn executed
to the defendants, Garrow, Miller and Dillon, an assignment of
the whole, or at least of the bulk of their property and effects;
which property and effects were particularly described in
the assignment.  This assignment was declared to be upon

the trust that the assignees should convert the assigned property into money, and after paying their costs, expenses, &c. to dispose of the proceeds as follows: First, to pay to certain preferred creditors, named as belonging to class No. 1, in schedule H., annexed to the assignment, the amount of their respective debts, giving a preference however to one debt belonging to that class over all others; secondly, to pay to the creditors named in the schedule as belonging to class No. 2, or rather to such of them as should, within three months after a written request from the assignees, agree in writing, under hand and seal, to receive such proportion of their debts as could be paid out of the surplus avails of the assigned property, after paying the preferred creditors in full discharge of their whole debts due from Grover and Gunn; thirdly, to apply the residue to the payment of the creditors named in the schedule as class No. 3, and all other debts of the assignors; and lastly, to pay the residue, if any there should be, to Grover and Gunn. The assignees were also authorized to compound with all or any of the creditors, in such manner and upon such terms as they should deem proper; but not so as to interfere with or depart from the order of preference established by the assignment. The creditors named in class No. 1, had claims against Grover and Gunn, or were responsible as endorsers for them, either as partners or individually, to an amount exceeding $35,000. One of those debts, however, was secured by a transfer of securities, which had been previously made to the holders thereof, of the nominal amount of $15,000; and some others had been partially secured. The assignment therefore provided that those securities should be first applied towards the satisfaction of those debts. The debts in class No. 2 exceeded $30,000; and class No. 3 embraced only two debts of $4,600, secured by bond and mortgage. Previous to the commencement of these suits, the assignees had realized only $16,500 from the assigned property, and had paid out $11,000 to the creditors mentioned in class No. 1. In the answers of the defendants, they denied all fraud in the assignment, unless it was illegal on its face, which they insisted that it was not. The assignees also insisted, in their

1832.

Wakeman
v.
Grover.

answers, if the assignment should be declared void by the decree of the court, that they should only be held accountable for so much of the assigned property, or the proceeds thereof, as remained in their hands at the commencement of these suits; and deducting therefrom their reasonable costs, charges and expenses. Replications were filed to the answers, but no proof was taken in either suit, except to establish the fact of the return of the executions unsatisfied; which fact was not admitted in the answers.

*D. Lord, jr.* for the complainant Wakeman. The objection of the want of parties is unsound. The progress of the suit would be impracticable, if it was necessary to make all the creditors of Grover and Gunn parties. The rule of this court as to parties, is a rule of convenience or expediency; and it is enough to bring before the court parties capable of litigating, and bound to do so. (*Cooper's Eq. Plead.* 40. *Chauncey* v. *May, Prec. in Ch.* 592. *Adair* v. *The New River Company,* 11 *Ves. jun.* 429.) In *Cullen* v. *Queensbury,* (1 *Brown's Ch. Cas.* 101,) a bill was sustained against a committee of a club for demands against the club, which was a numerous body. *Van Vechten* v. *Terry,* (2 *John. Ch. Rep.* 196,) is a similar case against the trustees of Washington Hall, (*See also* 1 *John. Ch. Rep.* 349.) Especially should such a rule apply here, where, if the complainants are entitled to succeed at all, such other parties have no rights, and where the whole subject of the controversy arises out of acts of the assignors and assignees, to which the creditors were not privy.

The assignment which the bill seeks to set aside is void, upon the ground of its being coercive, not being intended to give an honest preference to more meritorious creditors, but to exclude from any participation such as would not release; and of its being so contrived as to keep the funds unsettled, and incapable of settlement, by means of the indefinite extent of the provision for excluding any of the creditors, and thus delaying creditors. The law merely permits preferences; the policy of them is always doubtful, and they are watched jealously, especially in a court whose maxim is, "equality is equity." A mere preference, however, operates not to coerce any credi-

tor ; when given, it is a decisive parting with the property by a debtor, and has no operation on the hopes or fears of any other creditor, whose remedies are left unobstructed against the person or the other property of the debtor. It has no tendency to hinder or delay any of the creditors ; it is no more than a mere payment. But the present assignment is one creating a system of future preference, according as the creditor will or will not submit to the debtor's terms. It looks not at the merit either of the refusing or consenting creditor's debts. It tends to preclude all inquiry as to the conveyance comprizing all the debtor's property, as to the existence, amount or fairness of the debts for which the assignment is made, and all inquiry into the honesty of the debtor's conduct. The creditor's own debt may be stated at less than it is ; still the refusing creditor must take what is offered, although he may know of property concealed, of debts fabricated or excessively stated, or lose his portion of a provision which ought to be given to him unconditionally as a right, not as a favor. Our law always insists upon giving the creditors the right of examining where the debtor's property is gone, and into the good faith and honesty of his disposition of it. By this kind of compulsory assignment, such a right is denied and actually defeated. To tolerate assignments like the present, is effectually to screen all kind of fraud in debtors.

This assignment has upon its face an open and strong trust for the grantor or debtor, namely, the condition that by paying one third, perhaps less, possibly nothing, he shall be discharged of his debts. It means no benefit to the creditors, except as a consideration for the previous benefit of the debtor. Its main end and principal intent is the release of the debtor ; the payment of any creditor is merely incidental, so far as the intent is regarded. It is virtually putting the debtor's property into the hands of his friends, to enable them to give it to such as will discharge him. In *Jackson* v. *Brush*, (20 *John. Rep.* 5,) a deed given by a debtor to two persons, for the purpose of selling the property and paying the debts of the debtor, was held fraudulent.

Where a conveyance is for a proper intent, it is not void merely, because, in its consequences, it may hinder and delay

creditors. But the case is reversed when the main intent, the end, is to coerce, hinder and obstruct creditors, and the payment of any creditor merely an incident and means of coercion. (*Widgery* v. *Harbell*, 7 *Mass. Rep.* 144. *Harris* v. *Sumner*, 2 *Pickering*, 129. *Borden* v. *Sumner*, 4 *id.* 265.) In *Searing* v. *Brinckerhoff*, (5 *John. Ch. Rep.* 329,) a conveyance of real estate was given in trust to sell and pay over to such creditors as would release. It was held to render the conveyance void, for the reason, it was said, that it did not appear to comprise all the debtor's estate. Ours is a stronger case than this; as our debtors having assigned all their property, no fund is left for creditors who refuse their terms, to pursue. The assignment is so contrived as to keep the creditors at arm's length for an indefinite period, which never could be fixed by the creditors without a chancery proceeding. It delays, hinders and defrauds even those who are by a sort of compulsion obliged to submit to it. The case of *Hyslop* v. *Clarke*, (14 *John. Rep.* 458,) is decisive of this question. The property there was to pay certain creditors, namely, the assignees in any event. It was then to go to all the creditors, if all should execute a release, without specifying the time; but if any refused, then it was to go to the assignor's creditors, according to a new appointment of trusts by them, to be made immediately upon refusal of any creditor to release.

In that case, then, the property was at all events to go to the creditors, and not elsewhere. It was a conveyance upon trust to pay debts, and no other persons than creditors could take that fund. It required the new appointment to be made immediately. It was therefore comparatively innocent of the guilt of delay. It was, of all the property of the assignors, not specifically appropriated. But it was held void, because it attempted to coerce the creditors to execute a release, not by an absolute exclusion, as in this case, but by giving the debtors the power of exclusion; and also, because the creditors could not compel the new appointment of trusts to be made without a resort to the court of chancery. In the present case, instead of a power of exclusion on refusing a release, the exclusion is absolute; and the property is locked up from all creditors as long as the assignees choose to keep it open, until compelled

by a suit in chancery. All the reasoning of the court in that case substantially condemns this assignment. (*See also Austin* v. *Bell*, 20 *John. Rep.* 442.) The assignment being void in part, is void absolutely for the whole. (*Hyslop* v. *Clarke*, 14 *John. Rep.* 485. *Austin* v. *Bell*, 20 *John. Rep.* 442. *Mackie* v. *Caines*, 5 *Cowen's Rep.* 547.) The latter case is also an authority for a decree against the assignees personally for costs.

1832.

Wakeman
v.
Grover.

*John L. Graham*, for the complainant Varnum. The assignment in question is fraudulent and void, as well by the common law as by statute.

1. It violates the well settled principle of equity, that partnership funds must be first and exclusively applied to the payment of the partnership debts. (*West* v. *Skip*, 1 *Vesey*, 239. *Fox* v. *Hankley*, *Cowper*, 445. *Field* v. *Clark*, 4 *Vesey*, 396. *Dutton* v. *Morrison*, 17 *Vesey*, 193.)

This assignment directs that the nett proceeds and avails of the assigned property shall be applied in satisfaction of the individual as well as the partnership debts of the assignors, Grover and Gunn. The surplus interest of partners in the copartnership property, is alone liable for the payment of their individual debts. (*Nichols & Vandewater* v. *Mumford*, 4 *John. Ch. R.* 522.)

2. It was decided in the case of *Hyslop* v. *Clarke*, (14 *John. R.* 458,) in the supreme court of this state, (and the principles and authority of that decision have never been impugned, unless the case of *Murray* v. *Riggs*, decided in the court of errors and reported in 15 *John. R.* 588, may be considered as involving principles modifying those in the case referred to,) that, an insolvent debtor, has no right to place his property in such a situation as to prevent his creditors from taking it, under process of a court of law, and to drive them into a court of equity, where they must encounter great expense and delay, unless it be under very special circumstances, and for the purpose of honestly giving a preference to some of his creditors, or to cause a just distribution of his estate to be made amongst them all. (14 *John. R.* 464.) This case is conclusive as to

832.

Wakeman
v.
Grover.

the invalidity of the present assignment. The property assigned was placed beyond the reach of legal process. The creditors, who were pursuing their legal remedies to obtain satisfaction of their debts, were, in the language of the statute, delayed and hindered, and in judgment of law defrauded in the prosecution of their legal rights. A debtor has undoubtedly a right to prefer one set of creditors to another; but, when the object of an assignment is not only to give a preference to certain creditors, but to coerce others of them to sanction such preference (however unwarrantable) under the penalty of total exclusion from its benefits, then the assignment assumes a hostile character, and is justly subjected to the condemnation of that provision of the statute, which declares that no debtor shall hinder or delay his creditor in the prosecution of his just claims, or of that sound and salutary principle of the common law, which prohibits the debtor from doing any act, by which his creditor may be defrauded. The fundamental principles of a court of equity, which are founded on the basis that a debtor in insolvent circumstances must surrender the whole of his property to his creditors, and that upon such surrender an equal distribution should be made of the same amongst all his creditors, are evaded by this assignment, and the creditors are thereby delayed, hindered and defrauded in the prosecution and collection of their debts.

3. Another ingredient in the composition of the fraud in this assignment is, the fact of the debtors not having assigned the whole of their property. The debtors, in their assignment, do not profess to assign their whole property. As to the construction of the generality of the words in assignments, see *Wilkes & Fontaine* v. *Ferris*,(5 *John. Rep.* 344, 345.)

4. At the time the assignment was made, the defendants Grover and Gunn, were insolvent and unable to pay their debts. In this crisis of their affairs, justice and equity fairly required of them a fair and equal distribution of their propety amongst all their creditors rateably and proportionably.

5. The nature and operation of the assignment, is to reserve an interest for the debtors. (*Burd* v. *Smith*, 4 *Dallas', Rep.* 76 *to* 90.)

*W. H. Seward & A. Van Vechten,* for the defendants. All the creditors provided for in the assignment have an interest under it, and should have been made parties to these suits.

The debt of the Beaches was in fact a judgment debt against both Grover and Gunn, for which an execution had been levied on the partnership property before the assignment was made. There is no allegation in these bills to impeach this transaction; nor are the Messrs. Beach made parties, so as to make its fairness or legality a legitimate subject of litigation in these suits. The judgment, therefore, standing unimpeached, constitutes a legal and just claim against the firm of Grover and Gunn. (*James* v. *McKown,* 6 *John. Rep.* 543.) Besides, the assignment includes real property; the legal title to which appears by the answers to have been vested in Grover; upon which the judgment of the Messrs. Beach is a valid lien, which equity will not interfere with; and the delivery of the execution to the sheriff extended their lien to the tangible personal property of the firm.

The case of *Hyslop* v. *Clarke,* (14 *John. Rep.* 458,) relied on, is not analagous. For there the condition of the assignment was, that if all the other creditors except Hyslop & Co. did not entirely discharge the assignors, &c. the trust as to them should cease and be void; and the preference given to Hyslop & Co. was declared to be in consideration of Hyslop's assuming to execute the trust. Clarke was at the time a prosecuting creditor. There were several objectionable and fraudulent features in the transaction; but the principal point upon which the court rested their decision, was, that the assignment was to the use of the assignors, except as to Hyslop & Co.'s debt, unless all the other creditors submitted to the terms prescribed. But here the assignment is absolute, for the benefit of the creditors; giving a conditional preference to the creditors of the second class, at their election. If they do not elect to avail themselves of it, they come in upon equal terms with the unpreferred just creditors of the assignors. But it is urged that the complainants have not been requested to make the election offered them by the assignment. Be it so, what follows? Their right to elect is still open, unless they have de-

termined it by their suits to set aside the assignment; for by the terms of the assignment, it continues three months from the time the creditors are requested to make it. It is also alleged that the assignment is void by the statute of frauds, because made to delay the recovery of debts. It has never been held that an assignment by an insolvent debtor is void, merely because it may in effect produce delay to creditors. (*Wilder* v. *Winne,* 6 *Cowen,* 254, *and cases cited.*)

The bills not charging that Grover and Gunn had assigned all their property, they were not required to answer as to this more fully than they did. (6 *John. Rep.* 543.) And the complainants have admitted the sufficiency of the answers by not excepting to them. It has never been held that the insolvency of a debtor avoids the assignment of his property for the benefit of creditors, if it is not impeachable upon other grounds. It will be found by an examination of the assignment, that it does not reserve an interest to the assignors.

THE CHANCELLOR. The important question to be considered and decided in these causes is, whether the assignment upon its face is illegal and void, as being in violation of the statute, or as intended to delay, hinder, or defraud the creditors of Grover and Gunn in the collection of their debts. Before I approach this question, however, it is necessary to examine some other points, which have been made by the counsel on the argument. It is alleged in the answers of the defendants that certain other creditors of Grover and Gunn have recovered judgments at law, and that their executions have been returned unsatisfied; and it is now insisted that they should have been made parties. It appears by the answers that there is no real estate on which judgments could be a lien, unless it be the two church pews. So far as respects those, no decree can be made here which can affect the rights of judgment creditors who are not parties to these suits. If the assignment is valid, their judgments are no lien upon any of the property. And if it is set aside as fraudulent, the oldest judgment at law will have the preference notwithstanding any decree which

may be made in a suit to which the owner of that judgment is not a party. He may be interested in the question to be decided here, but cannot be affected by the decree. (*See Rundell* v. *The Marquis of Donegal, Hogan's Rep.* 122.) So far as respects the property on which no creditor has obtained a lien by his judgment or execution at law, this court has frequently decided that a creditor whose remedy at law has been exhausted, may file a bill here for his own benefit only, and without making other creditors standing in the same situation parties. (*Edmeston* v. *Lyde,* 1 *Paige's Rep.* 637.) Another conclusive answer to this objection is, that this allegation of the defendants is not responsive to any thing contained in the bill; and the defendants have introduced no evidence whatever, in either cause, to show that any judgment has been recovered against Grover and Gunn, except that on which the complainant's bill is founded. Replications having been filed, no statement in the answers not responsive to the bill can be of any avail to the defendants on the hearing, unless it is established by proof. It is also insisted by the defendants, that all the creditors whose debts are specifically provided for in the assignment are necessary parties to these suits. If the complainants were seeking to carry into effect the assignment, and to obtain their share of the assigned property, it would undoubtedly have been necessary either that they should have made all the creditors parties, or they should have filed their bills in behalf of themselves and all others, who might choose to come in under the decree. But I apprehend the rule is different when the creditor is acting in hostility to the assignment, and is seeking to set it aside on the ground that the assignee is endeavoring to retain the property of the debtor, under an assignment which is fraudulent and illegal. In such a case the creditor cannot file a bill in behalf of himself, and those whose claims he is opposing. And it would be unreasonable to compel him to be at the expense of making all the creditors whose claims are provided for by the fraudulent assignment parties defendants. If the assignment is illegal, the assignee has no claim to have the other creditors made parties for his benefit; and if it is valid, he is perfectly compe-

tent to defend himself without their assistance.    The uniform
practice in cases of this kind, so far as I have been able to dis-
cover from the reports, is to proceed against the fraudulent as-
signors and assignees, without making the numerous creditors
whose debts are provided for in the assignment parties.    In
the case of *Riggs and others* v. *Murray and others*, (2 *John. Ch.
Rep.* 565,) this course was pursued.    And much reliance is
to be placed on that case as a precedent, from the fact that **C.
S. Riggs**, one of the complainants, at the time of the filing of
that bill, was considered as standing at the head of the chancery
bar in this state.    The bill was filed in the same way in the case
of *M'Menomy* v. *Murray and others*, (3 *John. Ch. Rep.* 435.)    In
cases of this kind, also, the assignees suing in chancery for the
benefit of the trust fund have been considered so far entitled
to represent the interest of all the creditors provided for in the
assignment, as to be permitted to file a bill in their own names,
only, without making those creditors parties.    (*See Dey* v.
*Dunham*, 2 *John. Ch. Rep.* 182 ; *Nicholl* v. *Mumford*, 4 *Id.*
522 ; *Searing* v. *Brinkerhoff*, 5 *Id.* 329.)    The bills in the
causes now under consideration are not properly framed to
entitle the complainants to any relief, unless they succeed in
showing the assignment illegal and fraudulent as against
them.    And if that ground of relief can be established, the
creditors whose claims are provided for in the illegal and void
assignment are not necessary parties.

The first objection which is made to the validity of the as-
signment is, that it directs the proceeds of the property and ef-
fects of an insolvent partnership to be applied to the payment
of some of the separate debts of the individual partners ; to
the exclusion of, or in preference to the joint debts due to these
complainants and other creditors of the firm.    It appears from
the schedule A., annexed to the assignment, that some of the
preferred debts specified as belonging to class No. 1, are for
endorsements for Grover only.    In the body of the assign-
ment, also, it appears that it was intended to provide for the
payment of the debts due from *both*, or *either* of the partners
out of the assigned property.    The debt which is declared to
have a preference over all others, is a demand in favor of J.
H. & F. S. Beach as the endorsers of Grover's note, for the

benefit of Trotter & Douglass. It is stated in the answer, in reference to this debt, that it was in a judgment at the time of the assignment, and that an execution had been issued thereon and levied upon the goods of Grover and Gunn. It is not stated, however, that the judgment was for a partnership debt, or indeed that it was a judgment obtained against both the partners. If it was against Grover only, although the execution was levied on the partnership effects, nothing but the interest of Grover, subject to the payment of the partnership debts, could be sold on the execution; and as this firm was manifestly insolvent, the execution was not a lien upon any thing. Even if the language of the answer is to be taken as a positive allegation that it was a judgment against both, it cannot avail the defendants, as no proof has been introduced to show that any such judgment and execution ever existed. This part of the answers not being responsive to the bill, cannot be used by the defendants to support the assignment. The question presented by this point of the complainants, is one of great importance to the commercial community, and must, I presume, sooner or later, be brought before the court of dernier resort. I therefore prefer that it should be decided in a case where there can be no dispute about the facts, and where it may form the main point in the cause. The conclusion at which I have arrived on other objections to this assignment, renders it unnecessary for me to pass upon that question here.

The next objection to this assignment is, that Grover and Gunn, knowing themselves to be insolvent, have, without the concurrence of their creditors, made a voluntary assignment of their property to trustees of their own choosing, and have excluded a certain portion of the creditors from any participation in the assigned property, unless such creditors will consent to come in and take their share of the surplus, after paying the preferred creditors, and will discharge the assignors from all further liability, whether their debts are paid or not. It is supposed by the defendants' counsel that the creditors of class No. 2, are not absolutely excluded from participating in the assigned property, although they should refuse to discharge the assignors from the whole of their debts, and that they may

come in under the terms "all other debts justly due and ow-
ing from the parties of the first part, to be proven to the satis-
faction of the said parties of the second part." Even if they
are correct in this construction, I doubt whether it can alter the
rights of the assignees under the assignment. I confess I can
see very little difference in principle, whether the debtor re-
serves to himself a small surplus, if certain of his creditors will
not receive it in the full discharge of their debts, or whether
he frames his assignment in such a manner as to obtain the
benefit of a discharge of the whole debt upon the payment of
a part only, by any other species of coercion which he may
attempt to exercise over his creditor. It is settled that the in-
solvent has the right, while his property remains in his own
hands, to apply the same to the payment of one creditor in
preference to another, notwithstanding the principle of this
court is that equality among creditors is equity. This right,
however, is founded upon the supposition that there may be
creditors who have peculiar claims upon the property of the
debtor, and of which he is the most competent to judge. But
if the debtor uses the power of preference which the law has
thus given him, without reference to any supposed equitable
claims on the part of the creditors preferred, and with the sole
view of securing future benefit to himself, either by obtaining
a general discharge from his debts, or otherwise, it is, to say
the least, an unconscientious exercise of a legal right. And
where the debtor makes a voluntary assignment to a third
person without the concurrence of his creditors, and upon the
face of the assignment avows his intention to make the bene-
fit which shall thereafter be derived to himself the sole grounds
of preference, and thus to compel the whole or any portion of
his creditors to submit to his terms ; such an unconscientious
exercise of power ought not to be sustained in a court of equi-
ty. I do not think this case depends solely upon that question,
or that the construction contended for by the defendants'
counsel is the fair construction of this instrument. The as-
signors, in the first place, provide for the payment of the debts
of two different classes of creditors, on certain conditions as to
the second class, and then direct the payment of two creditors
named in class number three, and all other creditors. And

to show what they meant by other debts justly due and owing, from them they required that such other debts should be proved to the satisfaction of the assignees.   If the debts mentioned in class number two were the debts intended to be covered by the last clause, it could not be necessary to require them to be proved.   By other debts, the assignors evidently meant debts other than those specified in the schedule.

In the case of *Hyslop* v. *Clarke*, (14 *John. R.* 458,) it was decided that such an assignment was fraudulent and void. Judge Van Ness, who delivered the opinion of the court in that case, admits the right of the debtor to give a preference to particular creditors.   But he said the assignment in that case did not actually give the preference, and that it was fraudulent and void, because it was an attempt to retain the right to give a preference at a future period, and to compel the creditors to acquiesce in the terms offered to them. That case also decides that an assignment which is void in part as against the provisions of the statute, is void *in toto ;* and that no interest whatever passes under it to the assignee, as against the creditors who do not assent to it.   This principle was again recognized and acted upon in the case of *Austin* v. *Bell*, (20 *John. R.* 442.)   In *Searing* v. *Brinkerhoff*, (5 *John. Ch. R.* 329,) Chancellor Kent recognized the principle ; but he supposed it might have made some difference, if it had appeared that the assignment embraced all the property of the debtors of every description.   The same difficulty that existed in the case of *Searing* v. *Brinkerhoff*, however, exists here. It does not appear that the property assigned embraced all the property of the debtors.   On the contrary, it appears from the schedule C, annexed to the answer, that there was at that time, in the hands of J. E. & J. Mowatt, securities to the amount of $15,000, which had been assigned to them by Grover and Gunn to secure the payment of $6500; and that they were to account for the surplus.   The debt to the Mowatts was more than the amount thus secured, but it is evident from that assignment that they had other securities for a part of that debt.   If it was material for the defendants to show that they actually assigned all their property, both individual as well as joint, to sustain such a provision as was inserted in

1832.

Wakeman
v.
Grover.

this assigment, they should have stated that fact in their an-
swers, and sustained it by proof; as the assignment itself does
not profess to convey the whole.   I apprehend, however, that
it would make no difference, even if the assignment actually
conveyed the whole.   The law of this state does not recog-
nize any right on the part of an insolvent debtor to an ab-
solute discharge from his debts, although he may honestly
and fairly make a cession of all his property to his creditors,
to be applied to the payment of his debts equally or rateably.
Much less does it recognize the right or the justice of such a
discharge, when he has singled out favorite creditors and de-
voted the mass of his property to the payment of the whole of
their debts, leaving the rest of his creditors to come in for a
share of the residue.   In such a case, he is barred from all re-
lief under our insolvent laws, even if two thirds of his creditors
consent to his discharge.   And without such consent, his fu-
ture earnings are in all cases liable for the payment of the bal-
ance of the debts, after his property has been fairly distributed
among the creditors.   It frequently happens that the whole
of the property of a poor but honest creditor, and upon which
perhaps he is dependent for the support of a large helpless
family, consists in his claim upon the future acquisitions of an
improvident debtor, who has wasted the hard earnings of the
creditor by extravagance, or in gambling speculations.   In
such cases it would be the height of injustice to require the
creditor to relinquish his claim upon the future acquisitions of
his debtor.   The principle, therefore, which would authorize
the debtor to claim such a discharge as a right in all cases, or
to use his property in such a manner as to coerce his credi-
tors to grant such discharge, cannot be sound.   Although I
consider it as settled in this state, that the debtor cannot be
permitted to assign his property in the manner contemplated
in the assignment under consideration, I am aware that Judge
Story has held that the law was settled the other way else-
where ; although he admits the inclination of his own mind
is against the validity of such assignments.   (*Halsey* v. *Whit-
ney*, 4 *Mason's Rep.* 230.)   The cases upon which he relies as
having settled the law on this subject, are *Lippincott* v. *Bar-
ker*, (2 *Binney's Rep.* 174,) *The King* v. *Walton*, (3 *Price's R.*

6,) and a note of a manuscript case decided by Judge Wash-ington. (*Whart. Dig. Deed,* 1 *pl.* 72.) In the case of *Lippin-cott* v. *Barker* there was an assignment by the debtor of *all* his property for the payment of all his creditors, rateably, who should come in and execute a general release to the debtor within four months from the date of the assignmet. The as-signment, however, remained in the hands of the assignors until after a meeting of the creditors was called, and nearly ev-ery one of them was present and assented to the assignment. After that, it was delivered to the assignees, who took possession of the property. Under such circumstances, two of the judges in Pennsylvania held that the assignment having been ac-cepted by a portion of the creditors at the time of its delivery, was valid. Justice Yates considered the fact that it proposed to put all the creditors upon terms of perfect equality, as a strong circumstace in favor of the validity of the assignment ; in analogy to the general principles of the bankrupt law, which was in force at the time the debts were contracted. Brackenridge, J., however, considered the assignment illegal and void, both by the common law and by statute. He says, " It is not simply the surrender of his property as satisfaction *pro rata* of his debts that the insovent here has in view. He couples an interest for himself, in obtaining a discharge from that proportion of the respective debts which may remain un-satisfied. It is taking an undue advantage of the situation of a creditor to impose this condition. It is immoral to exact it. *Volenti non fit injuria,* if the creditor accepts ; but it is making a volunteer by compulsion, and is in fact a robbery. One en-lightened on the principles of moral honesty would never think of it. He would give what he had, to one or more, or to the whole of his creditors ; but he would never think of annexing a condition precedent or subsequent to such surrender." It must also be borne in mind that the court of errors in Penn-sylvania had before that time, in the case of *Burd* v. *Fitzsim-mons,* (4 *Dall.* 76,) decided that an assignment to trustees named by the debtors, without the assent of the creditors, and containing such a clause, was void. And it was not the intention of the court in *Lippincott* v. *Barker* to overrule that decision. In the case of *The King* v. *Watson* the creditors were

made parties to the assignment; and those who had actually executed it had debts due to them exceeding the full value of the assigned property. It was therefore a fair devotion of his whole property to the payment of those particular creditors, whether any others came in and signed the deed within the limited time or otherwise. In this respect, therefore, it was like the case of *Lippincott* v. *Barker.* The manuscript opinion of Judge Washington has since been published, (*Pierpont & Lord* v. *Graham,* 4 *Wash. C. C. Rep.* 232,) and as far as I can understand the same, it is in favor of the principle which Judge Story considered settled in such a manner as to induce him to yield his own opinion to what he considered the weight of authority. On a question of this kind, I should consider the opinion of Judge Story as entitled to equal weight with that of the late Judge Washington; and if the case in *Price* could be considered as an authority in point, I should think the opinions of Chancellor Kent and Chief Justice Spencer alone, to say nothing of the other judges of the supreme court of this state who have concurred with them in opinion on this question, as more than overbalancing the opinions of the judges who occupied the bench of the English court of exchequer at the time the case of *The King* v. *Watson* was decided. In addition to this, we have the case of *Ingraham* v. *Wheeler,* (6 *Conn. Rep.* 277,) which was not published, and was therefore unknown to Judge Story at that time; in which the principle adopted in the case of *Hyslop* v. *Clarke* is fully sustained.

There are, however, two other provisions in this assignment, which render it still more objectionable than the simple clause excluding those creditors who should not come in within a limited time and give their debtors a general discharge. In the first place, no time is limited within which the creditors of the second class are to come in to entitle themselves to a share of the surplus; but each is to come in within three months after the assignees may think proper to give him a written notice to accept or decline the offer held out to him by the assignment. Suppose the assignees should think proper to give one of the creditors a written notice to release his debtors within three month, or to forfeit all claims under the assignment: if he executes the release, he has no security

that the other creditors will be called on in the same way, within any reasonable time.  His remedy even for a share of his debt may therefore be delayed for years, if the friendly assignees named by the debtor himself think proper to delay the call upon other creditors.  And it is no answer to this objection that the creditor may obtain relief by simply subjecting himself to the trouble and expense of a chancery suit, to compel the assignees to give notice to the other creditors to make their election.  The question is not whether there is not a remedy for the creditors, but whether the debtor has not deprived them of any remedy for the recovery of their debts, unless they resort to a court of equity to counteract the illegal effect of the arrangement which has been made.  In the case of *Pierpont & Lord* v. *Graham,* Judge Washington admits that if no time is fixed by the assignment within which the creditors may come in, or a very distant period is named, the assignment must be considered as fraudulent.  And certainly it cannot be better, where it is left entirely in the power of the debtor, or the trustees of his own choosing, to fix that time for themselves, without the consent of the creditors.

What I consider a still more objectionable feature in this assignment, is the provision which authorizes the assignees to compound with all or any of the creditors, in such manner and upon such terms as they shall deem proper, provided it does not interfere with the order of preference thereby established.  The order of preference is to pay the debt due to the Beaches in the first place ; then the creditors of the first class ; then those of the second who shall have agreed to discharge the debtors ; and then those of the third class, together with other creditors not named, if any there are.  And if I understand the meaning of this provision, it has placed it in the power of the assignees to compound with any one of the creditors of each class, and to pay him a gross sum in lieu of his debt, whether such sum be more or less than he would otherwise be entitled to under the assignment.  The effect of this provision, therefore, is to perpetuate the right of giving preferences, by vesting in the assignees an arbitrary power in

relation to these several classes of creditors, and of compound-ing with any one upon such terms as they may think proper. If all the creditors of the second class should come in and con-sent to the terms of the assignment, the assignees are at liberty to pay any one of them a gross sum in lieu of his share of the fund, in advance, although it may be either more or less than he might be entitled to on a final settlement of the trust. And those who might not be willing to come in and discharge the debtors on any other terms, may be induced to accede to the assignment under a promise of a liberal compromise. I do not believe that the respectable gentlemen who are named as as-signees in this case, would allow themselves to use the pow-er conferred on them in this way. But it might be used in that way by friendly assignees named by the debtor. It is therefore to the principle of such a provision that I must en-ter my dissent. If it can be sanctioned in this case, it would be equally valid in an assignment to a trustee who would not be restrained from exercising the power by any very nice scru-ples on the subject.

Upon the whole, I am constrained to say that this as-signment does upon its face contain provisions which render it illegal and void as against these complainants, and it must therefore be set aside.

I agree, however, with the suggestion in the answer of the assignees, that they are not to be holden accountable for that part of the proceeds of the assigned property which had been paid over by them to the preferred creditors previous to the commencement of these suits. If the pews are not ex-empted from sale on execution, the complainant who has the oldest judgment at law, may now take out a new execution and have them sold thereon to satisfy his debt, as far as it will go ; but as to the other part of the property, I do not under-stand that any of it was remaining when the executions were issued on the judgments. The complainants have therefore acquired no lien upon any of the property or effects of Grover and Gunn, or the proceeds thereof, which had been appropri-ated for the payment of other creditors, at the time these suits were commenced. It is the filing of the bill in this court,

and not the return of the execution unsatisfied, that gives the creditor a specific lien upon property which was not liable to be sold on the execution at law at the time that execution was issued, or at any time afterwards.

There must be a decree in each of these causes, setting aside the assignment as fraudulent and void as against the complainant. And there must be a reference to the injunction master of the seventh circuit, in the first of these causes, to take an account of the proceeds of the assigned property and effects in the hands of the defendants, Garrow, Miller and Dill, after allowing them for all payments made to the creditors of Grover and Gunn, pursuant to the provisions of the assignment, previous to the filing of the bill, and their necessary expenses and disbursements in collecting or converting the assigned property into money; and the master is to allow interest as shall be just. The master is also to ascertain and report the amount due to the complainant for principal and interest on his judgment. And a similar account is to be taken in the second suit, unless the parties therein agree to abide by the account to be taken in the first suit. But in case of such agreement, then the master is also to compute the amount due to the complainant in the last suit for the principal and interest due on his judgment; and the counsel for such complainant is also in that case to be permitted to attend the master, upon the taking of the account in the first suit. If the parties cannot agree to take the account in one suit only, then the accounts in both suits must be taken at the same time, and the causes must proceed *pari passu ;* so that the defendants may not be subjected to any unnecessary expense or trouble upon the taking of such accounts. And the master is to have the usual power to examine the parties on oath, and to compel the production of books and papers. The assignees are also to be at liberty to pay into court, to be invested, the balance of the proceeds of the assigned property admitted to be in their hands; which shall discharge them from all claim for interest or losses on such balance from the time it is so paid into court.

All further questions and directions are to be reserved until the coming in of the master's report, or until the further order of the court. (a)

ⱽ (a) The assignment in the case of *De Caters* v. *Le Ray De Chaumont*, (2 *Paige's Rep.* 490,) contained a similar provision. But as all parties were seeking to affirm that assignment, and the creditors who were complainants asked the benefit thereof, there was nothing to prevent its being carried into effect; although the creditors might have proceeded in a different manner to reach the property.