Boynton and others v. Rawson and others.

Robb and others v. the same.

Sherrill and others v. the same.

---

### Boynton and others *vs.* Rawson and others.

### Robb and others *vs.* the same.

### Sherrill and others *vs.* the same.

A filed a creditor's bill in June, 1839, but did not serve process thereon, until March, 1840. B filed a similar bill against the same defendants in August, 1839, but did not serve process thereon until February, 1840. C filed a similar bill against the same defendants in September, 1839, and served process thereon in September, 1839. All the bills were taken as confessed, and a receiver appointed; and upon reference as to priority of claim, it was *held* that C was entitled to be first paid. B second, and A last, out of the fund in the hands of the receiver.

The filing of a creditor's bill, against a judgment debtor, only in ordinary cases becomes a lien upon his equitable assets, upon the service of subpœna: the mere filing a bill without issuing process thereon does not create a lien.

Among creditors, that creditor who files his bill first against a judgment debtor, obtains a preference in the equitable assets of such debtor, but to acquire such preference, he must follow up the filing of his bill by the service of process with all due diligence.

In ordinary cases of creditor's bills, the *lis pendens* begins upon service of subpœna after bill filed; there may be exceptions however to this rule.

THESE were three creditors' bills against the defendant Erastus Rawson, the judgment debtor, and the other defendants, his assignees, to set aside the assignment, and obtain satisfaction of the judgments of the several complainants, out of the choses in action, equitable interests and other property of the defendant Rawson. All the bills were duly taken as confessed, and a receiver appointed. It was referred to a master to settle the amount due to the respective complainants and to settle the question of priority or order in which the moneys in the hands of the receiver should be applied. The master reported the amount due in each suit, exclusive of costs, December 5, 1840, as follows:

In the first suit, the sum of $1,373 87;

In the second suit, the sum of $1,617 19;

In the third suit, the sum of $830 19;

and that the funds in the hands of the receiver were of about the value of one thousand dollars, and also that the several solicitors seemed to concede that the costs of the proceedings before the master should be paid out of the fund.

The master reported the state of facts as they appeared before him, of which the following is a brief summary. The bill in the first suit was filed June, 3, 1839—an injunction allowed, and subpœna taken out, but not served until some time between the first and tenth of March, 1840.

The reasons which appear in excuse for this delay of service, are, that the solicitor in the first suit had previously filed two similar bills against the same defendants, and injunctions and subpœnas were served in those suits, and that as the property was holden by those injunctions; the solicitor deemed it unneces-

*April, 1841.*

Boynton and others
v.
Rawson and others.

Robb and others
v.
the same.

Sherrill and others
v.
the same.

74

April, 1841. sary to incur additional costs by serving the process in the first above entitled suit. The two suits last mentioned were settled and discontinued, February 14, 1840.

Boynton and others v Rawson and others.

Robb and others v. the same.

Sherrill and others v. the same.

The bill in the second suit was filed Sept. 16, 1839; injunction and subpœna served between 26th and 29th September, 1839. Previous to filing this bill, the solicitor endeavored to ascertain if there would be any property remaining after satisfying the claims of the two above mentioned suits, which were then pending, and was informed by the defendants, in answer to an inquiry made by him, that no other creditors' bills had been filed against them, except the two which were subsequently settled.

The bill in the third suit was filed August 29th, 1839; injunction allowed and order for subpœna entered, but no service made until February 15, 1840. Notice of *lis pendens* in this suit was filed in Erie county clerk's office, Jan. 7, 1840, and in Niagara county, Feb. 15, 1840. The excuse for not serving process in this cause was, that the solicitor in the first suit was employed as counsel for the complainants in the third suit, and to save expense, advised to a delay in serving process in this suit, until the two suits then pending were disposed of; which suits being disposed of, February 14, 1840, process was served in this cause the next day. The first order for the appointment of a receiver in any of those causes, was made in the second cause, May 13, 1840. The defendants, and the solicitors for all the complainants, resided in the village of Lockport, in the county of Niagara.

The master reported that the full sum due to the complainants in the second suit, with their costs, was

entitled first to be paid out of the fund ;. that the full sum due to the complainants in the third suit, with their costs, was secondly entitled to be paid out of the fund, and the amount due to the complainants in the first suit, was lastly entitled to payment. To this report the complainants in the first suit except, insisting by their exceptions that they are entitled to be first paid out of the fund in preference to the complainants in either of the other suits. The complainants in the third suit also except, insisting that they are entitled to be first paid in full, out of the fund, or at least, that only the costs in the second suit should have preference over the debt and cost in the third suit, and that the debt and costs in the third suit, should have preference over the debt in the second suit. The argument comes on upon the report and exceptions.

April, 1841.

Boynton and others
v.
Rawson and others.

Robb and others
v.
the same.

Sherrill and others
v.
the same.

*J. L. Curtenius*, for complainants in first suit.

*H. Gardner*, and *A. C. Bradley*, for complainants in second suit.

*L. F. Bowen*, for complainants in third suit.

THE VICE CHANCELLOR. The counsel, in their very able and ingenious argument of the questions presented by the report and exceptions in this matter, seem to me, after all, to differ more, as to the definition of terms, than to the legal principles. The leading principles, as to liens acquired by creditors' bills upon the property of the judgment debtor, not tangible by execution, as settled by a series of decisions in our own courts, seems to be fully recognized by all parties.

April, 1841.  The order of the liens of judgments, executions and creditors' bills, seem to be well understood.   In judgments, priority is given to the age of the docket; in executions, to priority of delivery to the sheriff and levy, and in creditors' bills, to priority of filing the bill or commencement of the suit.   In pursuing the remedy in this court, the vigilant is favored; and the judgment creditor who first exhausts his remedy at law, by procuring an execution to be returned unsatisfied, and files his bill in this court to pursue and hunt out the equitable or consealed assets of the judgment debtor, will, even though he be the youngest in judgment, and the last in execution, if he comes here first, have here in this court, priority over all the others as the reward of his diligence.   This is an undoubted and undisputed proposition.   Chancellor Walworth, in Corning vs. White, (2 Paige, 568,) says, also, that a creditor's bill, under the Revised Statutes, operates as an attachment upon property which cannot be levied upon by law.   The difficulty in this case is not in the principles, or in the reconciling conflicting principles, but in adapting known and settled principles to the facts before us.   In this matter the complainants in the first suit filed their bill long first, but withheld service of process, or giving any notice that such bill was filed, until after process in both the other suits was served.   The complainants in the third suit filed their bill second, in point of time, but also withheld service of process, and giving any notice that their bill was filed, until after process in the second suit was served.   The complainants in the second suit filed their bill last, but ollowed it up immediately by service of process, and with so much diligence, that although their bill

Boynton and others
v.
Rawson and others.

Robb and others
v.
the same.

Sherrill and others
v.
the same.

was filed last, process thereon was served nearly five months before any process was served in either of the other suits. Now, under the rule that the diligent creditor, who first commences his suit in this court, obtains the first lien; under the above state of facts, which of these complainants have, in judgment of law, first commenced their suit in this court? The inquiry, in point of fact, is narrowed down to what constitutes a commencement of a suit in this court, and what, in legal effect, is meant by the term " filing a bill?"

April, 1841.

Boynton and others
v.
Rawson and others.

Robb and others
v.
the same.

Sherrill and others
v.
the same.

But though the inquiry may seem so narrow, its solution is not without its embarrassments and difficulties; and indeed, its solution would probably be different under different circumstances. The fact of " *litis pendentis*," is in many suits an important fact, vitally affecting others who come in subsequent to the *lis pendens*, and are held bound thereby, even though in reality they knew nothing about the pending suit. Authorities would not therefore be likely to leave us in the dark as to what constitutes a pending suit, or " *lis pendens*." In an anonymous case (1 Vernon's Rep. 318) it was held " that a subpœna served and a bill filed is a *lis pendens* against all persons; but a service of a subpœna without a bill being actually filed, makes no *lis pendens*; but the bill being filed, the *lis pendens* comes from the service of the subpœna, though it be not returnable until the next term, and though the party lives never so remote." Sugden on Vendors, (page 495,) also says, " When the bill is filed, the *lis pendens* begins from the service of the subpœna," and cites the case in Vernon. Chancellor Kent, in Murray vs. Ballou, (1 Johns. Ch. Rep. 576,) also says, " The estab-

April, 1841.

Boynton and others v. Rawson and others.

Robb and others v. the same.

Sherrill and others v. the same.

lished rule is, that a *lis pendens*, duly prosecuted and not collusive, is notice to a purchaser, so as to affect and bind his interest by the decree, and the *lis pendens* begins from the service of the subpœna after the bill is filed." See, also, Jackson vs. Dickinson, (15 Johns. Rep. 309.) In Roberts vs. Jackson, (1 Wendell's Rep. 478,) this principle received a practical application. A bill was filed on the 13th Feb. and injunction granted. Four days afterwards, to wit, on the 17th Feb. other parties obtained a judgment, which was a lien upon the land, the subject matter of the litigation. The Supreme Court held to the same doctrine laid down by Chancellor Kent in the above cited case of Murray vs. Ballou, that the *lis pendens* begins from the service of the subpœna after the bill is filed ; and in the case before them, they held that, inasmuch as there was no proof of service of the subpœna or of actual notice before judgment docketed, the sale under the judgment docketed, four days after the filing of the bill, conveyed a valid title ; in other words, that there was no *lis pendens,* because there was no proof that the subpœna was served, before the docketing of the judgment.

So much authority it has been thought desirable to glance at, to show what was formerly deemed necessary to be done before there could be held to be a pending suit in this court, to affect those who might subsequently become connected with the subject matter of the litigation. The *litis pendentis,* thus perfected by the service of process, destroyed the vendible power of the defendant over the subject matter of the litigation, or, at least, rendered the exercise of such power subject to the just claims of the complai-

nant in the pending suit. For the purposes of a wise public policy, it had the effect of notice to even strangers to the litigation.

But the counsel for the complainants in the first suit, say that all these cases were in relation to real estate, and as against subsequent *bona fide* purchasers ; and as the doctrine of *lis pendens* was in any event a hard one as against *bona fide* purchasers, the court in such cases will not hold the *lis pendens* perfect until subpœna served. He insists that the cases here presented are different, as the contest is not between the complainant and a *bona fide* purchaser, but between creditor and creditor. I cannot perceive the force of this distinction, and it certainly was not taken in the case of Roberts vs. Jackson above cited, where a subsequent judgment creditor, after bill filed and before subpœna served, was held to have the better equity as against the complainant in the Chancery suit. The same counsel also seems to suppose that the statute under which these suits are brought, has a bearing upon this question. If it has, I am unable to perceive it. The statute only affirmed a previously well recognized ground of jurisdiction in this court, and was passed probably because there was, or appeared to be, some apparent conflict in former decisions. It introduces no new rule either as to principle or practice. It gives no new lien ; and when the courts say that a creditor's bill filed under it is a *lien* upon the property which cannot be levied upon at law, they only affirm anciently established principles, and mean to declare that, in this, as in all other cases, the party who is first in this court with a pending suit, shall first reap the rewards of his diligence. To determine what a

April, 1841.

Boynton and
others
v.
Rawson and
others.

Robb and
others
v.
the same.

Sherrill and
others
v.
the same.

April, 1841.

Boynton and others
v.
Rawson and others.

Robb and others
v.
the same.

Sherrill and others
v.
the same.

pending suit or *lis pendens* is, we must throw upon it the light of former and ancient definitions. This we have attempted to do. The same counsel seem at least to suppose that the present Chancellor, when in his various decisions upon questions of this character, speaks of "filing a bill" and "commencement of the suit," as creating a lien, that he at least means literally, that the bare filing a bill in the clerk's office, without any thing farther done, does of itself operate as such *lien* in the nature of an attachment. If such is the fair import of the language of the present Chancellor, I shall certainly defer to the greater experience and ability, and higher authority of the head of this court. Some examination of his decisions may be necessary.

The first case is that of Weed vs. Pierce, (9 Cowen, 729,) decided by the present Chancellor when equity judge of the 4th circuit. In that case he lays down the rule, that the commencement of the first suit in equity by a judgment creditor, gives him a preference over other judgment creditors, even if the other judgments are elder. But he intimates, in the same case, that he must pursue his remedy with diligence, and quotes with approbation the case of Edgell vs. Haywood, (3 Atkins, 357,) where Lord Hardwicke speaks of a bill brought, *and lis pendens* created, as necessary to prevail over an assignment. This would seem to be sufficient to enlighten us as to the meaning of the term "commencement of the suit," in this case. In Beck vs. Burdett, (1 Paige, 309,) the same case in Atkins is referred to, to show what is necessary to give a specific lien. In Corning vs. White, (2 Paige, 568,) the Chancellor reiterates the doctrine that the filing of the bill here gives the pre-

ference ; but to show what is intended by that phrase,
he says, subsequently, that the defendant, after the
service of the injunction, can only make an assign-
ment subject to the prior equity of the complainant
—evidently contemplating the service of process as
necessary to secure the *lien.* Utica Insurance Com-
pany vs. Power, (3 Paige, 367,) was a case of set
off; but the case gave the opportunity for the remark,
that after the creation of a *lis pendens* here by the
filing of a creditor's bill, the subsequent assignee of
the defendant's choses in action, cannot be permitted
to retain them against the complainant's prior equity.
We have seen before, that *lis pendens* has a legal,
definite meaning ; and it must be supposed that the
term is here used in reference to such meaning. It
was hardly necessary, in such a place, to give it a
definition. In Wakeman vs. Grover, (4 Paige, 42,)
he merely reiterates the doctrine, that it is the filing
of the bill here which gives the *lien.*

In Ames vs. Blunt, (5 Paige, 13,) the same idea
is reiterated. In Burrall vs. Leslie, (6 Paige, 445,)
he seems to approve of the principle, that the decrees
were paid according to the times in which the bills
were filed. In Trotter vs. Bunce, (1 Edward's Rep.
573,) there was an exception to the answer, because
the defendant answered in the present tense as to his
property. The Vice Chancellor of the 1st circuit
sustained the exception, because, he said, the answer
might be true, and yet the defendant have had pro-
perty when the bill was filed and injunction served.

I cannot see any thing in all these decisions, cited
by the counsel for the complainants in the first suit,
to satisfy me that the present Chancellor has ever
entertained or expressed the idea, that the mere filing

Boynton and
others
v.
Rawson and
others.

Robb and
others
v.
the same.

Sherrill and
others
v.
the same.

April, 1841.

Boynton and others
v.
Rawson and others.

Robb and others
v.
the same.

Sherrill and others
v.
the same.

of a creditor's bill, is of itself sufficient to give the complainant in such suit, a preference over others, in the defendant's equitable assets. In laying down the rule, that he who first comes into this court, in cases of this kind, shall have a preference, he uses promiscuously the terms "filing the bill," "commencement of the suit," and "*lis pendens*," all evidently intended by him as synonimous, and meaning the same thing. They are clearly used as short terms to which a legal meaning is attached, and all intended to convey the same idea. In some of the cases, he has given us no clue in the case to the meaning he there attaches to the term used; in others, we are enabled to see that either or all of the terms embrace the idea that process must follow the filing of the bill, before the suit can be deemed commenced for the purpose of creating a specific *lien*. A legal definition belongs to the term *lis pendens;* and I apprehend all the terms so used have reference to such legal meaning, at least, I can see nothing to the contrary.

Upon filing a creditor's bill, it is usual to take out both an injunction and subpœna—an injunction to restrain the defendant from disposing of his property, a subpœna to compel him to answer the charge and discover his concealed property. By the service of this process, the defendant is notified, in an emphatic manner, of the commencement of the suit. He is able to give notice of it to others. It would be the means of great wrong and injustice, if a party could, by merely placing a bill on file among the mass of papers in the clerk's office, acquire a *lien* in this secret way, to defeat subsequent *bona fide* purchasers, honest assignees, or even subsequent creditors litigating in good faith. The filing of the bill should be

followed up by service of process, to acquire a lien; and its prosecution should be pursued with reasonable diligence, to retain it. Executions at law are a *lien* upon the personal property of the defendant, in the order they are delivered to the sheriff; but an execution issued and delivered to a sheriff, with directions not to serve it, would create no *lien.* Creditor's bills are said to operate like an attachment upon the property of the defendant not tangible by execution. But the mere issuing of an attachment, creates no *lien.* That process must be served before it can hold the property. So of these creditors' bills—there must be a service of the consequent process, to render it a *lien.*

The complainants in both the first and third suits, therefore, misapprehended their rights and position. They should, upon filing their bill and obtaining the allowance of injunction thereon, have persevered in their diligence, by the immediate service of process. The excuse that other bills were filed and pending, is not sufficient to protect them, even though it was done for the praise-worthy motive of saving costs. Others might be misled by this holding back; and in this case, the complainants in the second suit, before they commenced their proceedings, very properly inquired of the defendants if any other bills had been filed than the two then pending, with a view of ascertaining if they could reap any thing by diligence on their part. When they ascertained there had not been, they commenced proceedings, and speedily acquired a *lien* in a proper way; and they should have the fruits of it. Again: upon an order of reference to a master to appoint a receiver, he is required to ascertain what other creditors' bills have been filed

April, 1841.

Boynton and others
v.
Rawson and others.

Robb and others
v.
the same.

Sherrill and others
v.
the same.

April, 1841. against the same defendants.   If such reference had
been made previous to the service of process in either

*Boynton and others* of these causes, the defendants, who would have been
*v.*
*Rawson and others.* the persons naturally inquired of, could have given
no information in relation to such suits ; and it seems

*Robb and others* to me that this circumstance would furnish some in-
*v.*
*the same.* dication that the complainants in such suits, could
with propriety prefer no prior claim upon the fund.

*Sherrill and others* One other view.   If the defendants, during the
*v.*
*the same.* pendency of the two suits which were compromised,
and after the filing of the bill in the first suit, had
made an assignment under the insolvent act, what
interest would the assignees have taken ?   It seems
to me, clearly, that they would have taken the whole
interest of the defendants in all their property, sub-
ject only to the claims in the two suits then pending,
and not subject to the claim of the complainants in
the first suit.   If, then, the complainants in the first
suit would be postponed to the claim of such assign-
ees, it would seem to show that they had acquired
no lien by merely filing a bill, without serving pro-
cess.

Circumstances may point out exceptions to the
rule indicated in this opinion, as when the complai-
nants in a second bill, misled the complainants in the
first bill, so that they should fail in getting their pro-
cess first served ; or when the complainants in the
first suit could not, with all diligence, find the defen-
dants.   But such cases, if they should arise, would
be mere exceptions, and do not come within the facts
of this case, where the defendants and all the solici-
tors resided in the same village.

The master has adopted the correct principle for
settling the priority of claims, and his report must be

confirmed, and an order entered in conformity thereto, providing for the payment of the expenses of the reference out of the fund ; and the complainants in the first and third suit must pay to the complainants in the second suit, the costs of their respective exceptions, to be taxed.

April, 1841.

Boynton and others
v.
Rawson and others.