Mr. Justice Clayton
delivered the opinion of the court.
In this suit the validity of the .deed of assignment, made by the Grand Gulf Bank of its effects, is in controversy. Its invalidity is asserted upon several grounds.
It is first urged that the deed was never delivered, or if delivered, that it was upon a condition, which did not occur. The evidence shows that the deed was delivered to the trustees, and this is equivalent to delivery to the cestui que trusts. It was also recorded, which amounts at least to prima facie evidence of delivery. In regard to the alleged condition, there is a failure of proof. One of the directors states that it was his understanding, that the deed was not to take effect or be recorded, unless the original Briscoe bill, which was at the time pending before the legislature, should become a law. At that session the bill was defeated. But this witness states the understanding of no one but himself. There is no other testimony in support of his view of the transaction. The reasons which the president of the bank itrged for the execution of the trust deed, tend to the opposite conclusion, and to show that it was the object to make an absolute assignment. Suits were pending, and it was his intention to prevent a forced sale of the property, either under the judgments, or under the operation of the Briscoe bill, the effect of which then seemed to be little understood.
It is again insisted, that the deed is void, on the ground, “ that if a debtor assigns only part of his property, and stipulates in the assignment, that the creditors shall give a general release, as a condition to entitle them to receive a dividend, such- stipulation is fraudulent, and renders the assignment void.” The New York cases certainly establish this doctrine, and, as we think, *30 upon correct principles; though the courts of Pennsylvania seem to hold differently. Wakeman v. Grover, 4 Paige, 23; Brashear v. West, 7 Peters, 608. The principle is familiar. A debtor in failing circumstances, cannot devote a part of his property to the payment of his debts, reserve a part, and say to.his creditors they shall not touch the part so devoted, unless upon surrendering all claim to that which is reserved. In other words, a debtor cannot keep any part of his property from his creditors, except that which the law secures to him, and any attempt to do so, amounts to a fraud. But is this deed of that character? Is there any reservation for the benefit of the bank 1 It transfers, by a sweeping assignment, all the property and effects of the bank to trustees, except some claims reserved in a schedule annexed to and made part of the deed, and directs the trustees to dispose of the property, collect the debts, and pay over to its creditors rateably, as fast as the assets are realized. There is no stipulation, that if any of the creditors proceed against the effects reserved in the schedule, they shall be excluded from the benefits of the deed of trust. If a creditor were to pursue those particular debts, there is nothing in the deed, or in the nature of the transaction, which would prevent his coming in for a share of the dividends under the deed, in proportion to what might be due him, after deducting any amount realized from the debts contained in the schedule. There is no room, therefore, for the operation of the principle invoked.
Neither does this case fall within the principle of Arthur v. Commercial and Railroad Bank of Vicksburg, 9 S. & M. 394. In that case, there was a resulting trust to the assignors of the railroad and its incidents, after the profits should have paid the debts, excluding the creditors in the mean time? from all right to go against the road. That was placed beyond the reach of creditors, by the conveyance to the trustees. But here these debts are not conveyed to the trustees. They are reserved from the operation of the trust. They stand precisely as if no deed of assignment had been made. They are not embraced within it, and are as open to creditors as if there had been no conveyance.
*31 Neither does the provision, that no interest was to be paid, until the whole principal of all the debts was paid, of necessity vitiate the deed. Perhaps it gives some advantage to a part of the creditors over others; but it secures no benefit to the bank. Such preferences may lawfully be given. Some creditors may be entirely postponed to others. It grows out of the ownership, and absolute right of disposition over property not incumbered. The whole debt, principal and interest, is at last to be paid. The provision does not necessarily preclude the mode of calculating interest, prescribed by the statute, because after all the principal is paid, if there be funds sufficient, the interest is to be paid, and it may then be computed according to the statute to ascertain the real amount due. But we do not see, if the creditors claiming under the deed, are satisfied with this, why those claiming against it should complain. If it has the effect they ascribe to it, it increases their chances of being paid, and operates against the other creditors. These last may surely renounce a law intended for their benefit.
A deed may delay creditors, and not be void, when such delay is not its principal object. Douglas v. Bank of Virginia, 11 S. & M. 469. The salaries of the assignees, though large, do not make the deed fraudulent upon its face, and there is no testimony on the subject. Arthur v. R. R. Bank, as above. As to the probate of the deed for record, it is in substance an acknowledgment by the party, though in form a probate. The jurat cannot take away its character of an acknowledgment. The decree dissolving the injunction, is reversed ; the injunction ordered to be reinstated, and the cause remanded.