## Ely *vs.* Cook and others.

An assignment for the equal benefit of all the assignor's creditors, allowing no exemptions, creating no preferences, and providing for no surplus, until and unless all the creditors shall be fully paid and satisfied, in which event, only, the assignees are to return the surplus to the assignor, is not fraudulent and void on its face.

Appeal by the plaintiff from a judgment entered at a special term. The action was brought by the plaintiff as a judgment creditor of George Cook, to set aside an assignment made by the latter, on the 6th of May, 1851, for the benefit of his creditors, as fraudulent and void. The assignment was of all the estate, real and personal, and property of every kind and description, of the assignor, excepting such as is by law exempt from levy and sale under execution. " In trust to collect, sell and convey the same and convert the same into cash, and after paying the costs, charges and expenses attending the creation of this trust, and a reasonable and legal compensation to the parties of the second part for their services therein, to divide and pay the residue of said proceeds equally among all the creditors of the said party of the first part, in proportion to the amounts of their

Ely *v.* Cook.

respective demands, until they are fully paid and satisfied, and return the surplus to the said party of the first part."

It was decided, at the special term, that the assignment was not fraudulent and void as against creditors; and the complaint was directed to be dismissed with costs.

*By the Court,* ROOSEVELT, J. The judge before whom this cause was tried without a jury, held that the assignment in question, made by the debtor for the benefit of his creditors, was not fraudulent or void; and that the plaintiffs' complaint should be dismissed with costs. From that judgment they have appealed to the general term.

The assignment—a rather unusual feature in such controversies—was in this case a transfer of all for the equal benefit of all. It allowed no exemptions, and created no preferences, and provided for no surplus, until and unless "all the creditors should be fully paid and satisfied." In that event, and in that event only, the assignees were "to return the surplus" to Cook the debtor. Is such an assignment, on its face, fraudulent? Or can such an assignment, without a reckless abuse of terms, be said to be a transfer " made for the use of the party making the same ?" It is admitted that without any express direction as to a surplus, if any, a trust by operation of law would have resulted in favor of the assignor, and that such a resulting trust would not have affected the validity of the instrument. How then can an express direction, of the same precise import as that which the law without the words would have implied and sanctioned, be unlawful?

Such assignments, when made in good faith, are no more transfers " for the use of the assignor," than are ordinary mortgages for the use of the mortgagor. In the one case, as in the other, if there be a surplus on the sale, it goes, as it obviously ought to go, and as the instrument provides it shall go, to the party making the mortgage or assignment. That is a " use," in either case incident to the transfer, but not a " use," for which the transfer " *was made.*" And in this lies the whole difference—a difference not verbal or technical, but founded in common sense—overlook-

ed, I admit (and most unfortunately for the cause of diminished litigation) in some judicial dicta, but having its basis nevertheless in authority as well as reason. Where a debtor perfectly solvent, wishing to prevent the ordinary course of collecting a debt by judgment and execution, makes an assignment solely for that object, thus "delaying and hindering" his creditor, for his own and not his creditor's advantage, in other words to promote his own gain at the expense of his creditor's loss—such a transfer, it is obvious, although nominally "for the use" of others, is really, as the statute expresses it, "for the use of the person making the same," and therefore fraudulent and void. (*Kellogg* v. *Slawson,* 15 *Barb. S. C. R.* 56. *Ogden* v. *Peters, Id.* 560.) But where, on the contrary, the property of the debtor is of a doubtful character, and may or may not, according to circumstances, be sufficient to discharge his debts in full, and his primary object and influencing motive is "to distribute it equitably and fairly," an assignment in such case, instead of violating the policy of the law or the rights of creditors, would be in harmony with both ; it would, in the language of Mr. Justice Strong, "not only be exempt from the charge of fraud, but would be commendable."

If assignments by embarrassed debtors are ever valid, the one under consideration, it seems to me, must be so adjudged. Even the plaintiff's counsel himself on the argument appeared to concede the point. Were it not, he said, for certain recent decisions which did not commend themselves, he admitted, to his reason, the suit would not have been instituted. Those decisions are either susceptible of the distinctions which have been adverted to, or, in my judgment, they are not law. As generally interpreted they shock the common understanding. Assignments have been set aside where to ordinary, and even to judicial perception, (*see Peters' case, supra,*) "there was neither actual nor presumptive fraud." I am not disposed blindly and hastily to follow these decisions, but, with Mr. Justice Strong, prefer "to leave it to the legislature (the appropriate department) to abolish, if they shall think proper, all preferential assignments ;" and, I may add, all other assignments, unless officially made and offi-

cially regulated.   Until such legislative action it is the province of the judiciary to administer the law as it has been recognized for more than half a century.

The plaintiff's complaint was properly dismissed by the special term, and its judgment should be affirmed with costs.

[NEW-YORK GENERAL TERM, November 6, 1854.   *Mitchell, Roosevelt* and *Clerke,* Justices.]