Spaulding *v.* Strang.

---

## SPAULDING *vs.* STRANG and others.

On the 16th of November, 1854, an agreement was executed by and between B. & F. and certain of their creditors, by which the latter covenanted that in case B. & F. should, on or before the 1st day of December, 1854, execute to S. an assignment of all their property, preferring therein as first class creditors an amount not exceeding $60,000, and preferring the covenantors to the amount of fifty cents on the dollar on their several claims, they would, on the execution and delivery of such assignment, discharge B. & F. from all liability for the balance of their claims. Assignments of the individual and partnership property of B. & F. were executed by them to S. on the 1st of December, 1854. The assignment of the partnership property contained this recital: " Whereas the said parties of the first part are copartners in trade in the city of New York, under the firm of B: & F., and are at present unable to pay their debts, *and have agreed* to assign the property

hereinafter referred to, for the benefit of their creditors, *in the manner hereinafter mentioned.*" By that assignment, certain creditors representing about $53,000 of the debts were first to be paid in full; the sixty creditors who signed the agreement of November 16, 1854, representing about $93,000 of the debts, were next to be paid 50 per cent; and then, if there was any thing left, it was to be applied in equal proportions and without preference, towards the payment of all other partnership debts. The assignment of the individual property of the assignors contained similar provisions. *Held* that the assignments must be construed in connection with the agreement of November 16th, and the three together must be looked upon as constituting one transaction or instrument; and that, thus viewed, the assignments were on their face fraudulent and void as to the plaintiff and other creditors who were not preferred, and who declined signing the agreement: 1st. Because the assignors thereby intended to reserve or secure for themselves a benefit; and 2d. Because the whole proceeding was an attempt to coerce the creditors to enter into the compromise.

ACTION to set aside assignments made for the benefit of creditors.

SUTHERLAND, J.   I think the assignments made, or purporting to have been made, for the benefit of their creditors, by Bradner & Furman, on the 1st day of December, 1854, must be construed in connection with the previous agreement of the 16th November, between them and certain of their creditors, and that in deciding the question whether the assignments were and are fraudulent and void as to the plaintiff on their face, the agreement and the assignments must be looked upon as constituting one transaction or instrument. The assignment of the partnership property contains a recital in these words: " Whereas the said parties of the first part are co-partners in trade in the city of New York, under the firm of Bradner & Furman, and are at present unable to pay their debts, *and have agreed* to assign the property hereinafter referred to for the benefit of their creditors, *in the manner hereinafter mentioned.*"

The complainant alleges that the assignment which Bradner & Furman respectively made of their individual prop-

erty, contained similar provisions to those contained in the assignment of their partnership property, and was made for a like purpose and pursuant to the agreement of the 16th of November previous. This allegation is not denied by the answer of the defendants, but is substantially admitted by it.

By the agreement of the 16th of November, the creditors who executed it covenanted to and with Bradner & Furman, that in case they should, on or before the 1st day of December, 1854, execute to Peter O. Strang an assignment of all their property, preferring in said assignment as first class creditors an amount not exceeding $60,000, and preferring them (the creditors who executed the agreement) to the amount of fifty cents on the dollar on their several claims, they would in such case on the execution and delivery of such assignment discharge them, the said Bradner & Furman, from all liability for the balance of their claims.

The assignments were made to Peter O. Strang on the 1st day of December, 1854. By the assignment of the partnership property, certain creditors, representing about $53,000 of the debts, were first to be paid in full; the sixty creditors who signed the agreement of the 16th of November, representing about $93,000 of the debts, were next to be paid 50 per cent; and then, if there was any thing left, it was to be applied in equal proportions and without preference, towards the payment of all other partnership debts.

It is apparent that the assignments were in fact made in pursuance of the agreement of the 16th of November, and that they should be construed together, and should be looked upon as constituting one instrument, for the purpose of seeing whether the law, on the face of the instruments themselves, pronounces the transaction illegal, and fraudulent and void, as to the plaintiff and other creditors, who were not preferred, and who declined signing the agreement of the 16th of November.

Strang, the assignee, has realized from the assigned property. $72,37.782, and that is all that probably ever will be

realized. The preferred debts of the first class, amounting with interest thereon to $61,072.42, have been paid by the assignee. The rest of the property and of its proceeds are in the hands of the assignee. The effect of the transaction, if carried out, would be wholly to deprive the plaintiff and other creditors, who did not sign the agreement, and who were put in the third class, wholly, of any share or portion of the assigned property, or of its proceeds.

By the agreement of the 16th November, the creditors who signed it in the first place severally covenanted to and with Bradner & Furman, *in consideration of one dollar* to each of them *paid by Bradner & Furman*, that they would discharge their debts on receiving, on or before the 1st day of December, 1854, forty cents on the dollar in securities, and the notes of Bradner & Furman for ten cents on the dollar. The creditors then further covenant, "in case the said Bradner & Furman shall be unable to do so," (that is, effect the compromise,) upon the execution of the assignment to Strang, putting them in the second class for fifty per cent of their debts, to release the balance as above more at large substantially set forth.

The acceptance of the agreement by Bradner & Furman, although it does not appear to have been signed by them, was in effect a promise or covenant on their part, in case they made an assignment, to make it to Strang, and to put the creditors who had signed it in the second class, and to prefer them over, those in the third class, to the amount of fifty cents on the dollar. It is apparent from the papers, and from the whole transaction, that the consideration which induced this preference, was not any supposed equitable nature of the claims of these creditors, or any sense of a moral or honorable obligation, but was the covenant on the part of these creditors to release the balance of their claims. By this transaction these creditors purchased, and Bradner & Furman sold to them, their position in the assignment, and the chance of getting fifty per cent, or at least something on

their debts. Surely, the absolute release of their future acquisitions from nearly fifty thousand dollars debt was an important consideration for the assignors. Surely, if by this arrangement, or transaction, the assignors secured or reserved to themselves the absolute right to this release, they secured or reserved an important benefit for themselves.

The manifest intent of Bradner & Furman was to coerce all of their creditors into the terms of the compromise provided for in the agreement of the 16th November. It would appear from the instrument itself, and I think it appears from the pleadings and the evidence in this case outside of the instrument, that the compromise was first offered to the creditors, and not proposed by them.

The agreement purports to have been executed in consideration of one dollar paid by Bradner & Furman. By presenting this instrument to the creditor, Bradner & Furman in effect said to him, sign this, and you will get half your debt; but if you do not sign it, you will of course fall into the third class and get nothing. It is plain to me, from the transaction as shown by the papers, that Bradner & Furman wished to avoid making an assignment by making the proposed compromise with all their creditors. Not being able to get all, except those whom they intended to pay in full, to sign it, they made the assignment.

It appears from evidence in this case that, notwithstanding the assignment, the assignee has never paid any thing to the second class creditors, and that most if not all of their claims, after the assignment, were purchased by friends or relatives of the assignors, or of one of them, at rates from ten to fifty cents on the dollar.

My conclusion is, that the assignment to Strang, when viewed in connection with the previous agreement of the 16th of November, on its face is fraudulent and void as to the plaintiff, and must be declared to be so, upon two grounds: 1st. Upon the ground that the assignors thereby intended to reserve or secure for themselves a benefit ; 2d. Upon the

ground that the whole proceeding, viewed as one transaction, was an attempt to coerce the creditors to enter into the compromise. I think this case comes fairly within the prinple decided in *Hyslop* v. *Clarke*, (14 *John.* 458 ;) *Wakeman* v. *Grover*, (4 *Paige*, 23, *S. C.* 11 *Wend.* 187 ;) *Armstrong* v. *Byrne*, (1 *Edw. Ch.* 79 ;) *Lentilhon* v. *Moffatt*, (1 *id.* 451 ;) *Mills* v. *Levy*, (2 *id.* 183.)

An insolvent has a right to make an assignment for the benefit of his creditors, with preferences. In this case, Bradner & Furman had a right to prefer the second class creditors to the third, but they had no right to enter into a *bargain* with the second class to give them such preference, and carry it out under color of an assignment for the benefit of their creditors, for their own benefit, to the injury of the plaintiff and other creditors not parties to the *bargain*.

The plaintiff is entitled to a judgment declaring the assignment and the whole transaction void as to him and other creditors who were not preferred and did not sign the agreement of the 16th of November, and that he is entitled to be paid the amount of his judgment, with interest thereon and the costs of this action, out of the assigned property, or the proceeds thereof remaining in the hands of the assignee, after the payment of the first class creditors in full, at the time of the commencement of this action.

It appearing by the answer of the defendants that there remained in the hands of the assignee, after having paid the creditors of the first class, in full of the proceeds of the assigned property, more than sufficient to pay the plaintiff's claim with costs, my impression is, that the assignee should be directed to pay the same out of such funds, without any reference to taking an account of the assigned property and the proceeds thereof. This question and all other questions is reserved, however, until the settlement of the decree, which must be settled on two days' notice. As this action is for the benefit of the plaintiff alone as a judgment and execution creditor, and not for the benefit of himself and other credi-

tors in the like situation, if the assignee has sufficient of the trust funds in his hands to pay the plaintiffs claim after having paid the first class creditors in full, I see no necessity either for a receiver or for a reference to take an account.

[NEW YORK SPECIAL TERM, July 31, 1860. *Sutherland,* Justice.]