By the Court—Bosworth, Ch. J.
Since the appeals in these cases were argued, a copy of the assignment of Graydon, McCreery & Co. has been submitted to the Court, by the written consent of the attorneys of the parties. The Court is now in a condition to consider the provisions of the assignment by looking at them as actually written, instead of being obliged to construe the allegations in the affidavits to ascertain the terms or legal effect of such provisions.
The assignment is not invalid by reason of anything appearing on its face, of which these plaintiffs, who are creditors of the firm, can complain. The assignment devotes all of the assigned property to the payment of the debts of the firm, in the order specified in schedules annexed to the assignment.
The fact that some of the creditors of the firm, who are provided for in schedule B, had previously signed the “ agreement of compromise,” (so called,) by which they agreed to take fifty per cent of the amount due to them, in *643 satisfaction of the whole amount of their demands, provided the assignors, if they should find it necessary to make an assignment of their property, should “secure the payment of the said fifty per cent,” “ by preference in such assignment, (after confidential debts,)” does not tend to show the assignment to be fraudulent. The assignment does not profess or purport to secure such creditors next after confidential debts. Samuel Gray don is preferred for the amount justly owing to him upon the promissory notes which he held, amounting to about $86,675.51, all of which he purchased at a large discount, and principally after said compromise agreement was signed. He is preferred to every creditor named in schedule B, who signed the compromise agreement, and such notes cannot be regarded as a confidential debt, within the meaning of the compromise agreement.
Hence, in respect to the debts named in schedule B, the creditors who signed the compromise agreement are not preferred next after confidential debts, and the assignors are not in a condition to claim that they are entitled to enforce the compromise agreement and to be released from all debts owing to the creditors who signed it, in the event of their realizing from the assigned property fifty per cent of their debts.
If the assigned property should produce sufficient to pay the debts named in schedule B, in full, the creditors owning them will be entitled, for aught that appears in the papers before us, to retain the whole amount; and, probably, for the reason that the assignors did not consider that the assignment was so made as to enable them to claim any benefit from the compromise agreement, they provided for the payment of the debts owing to such creditors, in full, provided the assigned estate should be sufficient to pay in full.
In this view there is no ground for suggesting that a provision was made to pay them in full, while securing payment of fifty per cent would extinguish the whole demands, with intent to secure to themselves or withhold *644 from their other creditors, enough of the assigned property to satisfy the other fifty per cent, or so much of it as the property might be sufficient to pay.
The notes purchased by Samuel Graydon, being just debts, the assignors might lawfully direct them to be paid in full, and in such order of priority as they chose to designate, although purchased at a discount.
The papers before us do not justify the conclusion that the notes, in respect to which Samuel Graydon is preferred were, or that any of them were, bought by him in trust for the assignors, or that they were fraudulently preferred in the assignment for the use and benefit of the assignors, or either of them.
The orders, in both of these causes, should be affirmed, with costs.
Robertson, J.
Upon a re-examination of these two cases, I have not found any reason to change my views expressed at Special Term, nor has anything been advanced sufficient to change them. Some new objections have been started to the assignment in controversy, which require examination. But, in examining them, I propose to overlook any other evidence of fraud than the supposed compromise agreement of March 7th, 1861, the assignment itself, and any supposed inducements to some of the creditors of the assignors, but not to the plaintiffs in either action.
These objections are reducible to three:
I. A supposed omission, in the assignment, to provide at all for one half of the debts preferred in schedule B, annexed thereto.
II. A failure to provide for individual creditors of the .assignors, although individual property passes under its provisions.
III. The employment, by Graydon, McCreery & Co., of either the assignment or previous threats to coerce some of their creditors (not including the plaintiffs in either, action) into a surrender of part of their demands.
*645 The plaintiffs do not claim to be creditors of the members of the firm of Graydon, McCreery & Co. individually, or to be among those preferred in the schedule annexed to the assignment. They were neither the dupes of a promise of preference if they would release half their claims, nor the victims of a threat to be postponed if they would not. They place their right- to set aside the assignment upon the injury done by it to others. If they have any right to avoid the assignment, it must be either under the statute which makes transfers for the use of, or in trust for, the assignor void, as against both subsisting and subsequent creditors, (2 R. S., 135, § 1,) or that which, makes an assignment, with intent to defraud any one, void as against the person intended to be defrauded. (2 R. S., 137, § 1.)
The omission of either creditors or property in an assignment for the benefit of creditors to trustees, has never been held to make it ipsó facto void upon the ground of an intent to hinder, delay and defraud creditors, but solely upon the ground of its creating a trust for the assignor. In Carpenter v. Underwood, (19 N. Y. R., 520,) in the Court of Appeals, it was held that the mere omission of some of the debtor’s property, did not make the assignment void. And it is doubted whether the omission of some of the creditors, from an assignment by their debtor, makes it void, unless it purport to convey all his property. (Doremus v. Lewis, 8 Barb., 124; Bishop v. Halsey, 3 Abbotts’ Pr., 400.). There is no fraudulent intention to be inferred from failing to provide for all of a debtor’s creditors in an assignment, or omitting to transfer any of his property. His interest under the assignment, or his omitted property, can always be reached by execution or a creditor’s action. (Leitch v. Hollister, 4 N. Y. R., 211.) The doctrine has been principally discussed in cases where a provision was made for the return of any surplus to the assignor after paying debts. It is true, in Barney v. Griffin, (2 Comst., [2 N.Y.,] 365,) in the Court of Appeals, the omission to provide for some creditors in the assignment, and a pro *646 vision'for the return of the surplus to the assignor, was held to he a fraud, but only as to the creditors not provided for, because the property was placed beyond the reach of executions in the tands of men not accountable to them, and upon a trust in part for the benefit of the debtor. The omission was not held to be of any avail as to persons provided for. The doctrine, however, of that case, was more than questioned in Curtis v. Leavitt, (15 N. Y. R., 176,) where the assignment contained the same provisions. In that case, Justice Comstock, in delivering the opinion of the Court of Appeals, and commenting- on the case of Barney v. Griffin, points out the true distinction. He says: “A particular provision may be simply “void or inoperative, * # and others good. This is “the true rule, where the question arises upon a statute, “simply declaring voidness, unless the declaration, in the “ strictest terms, embraces the whole instrument. Trusts “in personal estate for the use of the person who creates “them, are not illegal or'criminal, unless they are made “ with fraudulent motives. In themselves, they are entirely “innocent. They are simply declared inoperative and “void as to creditors.” He then proceeds to ask the question, whether it is a necessary construction of the statute that valid trusts must fail, because in the same conveyance there is an innocent one void, where the superior rights of creditors are concerned?—and answers that it is not; that “a single deed may have ‘a conveyance' a ltrans“fer,'> or an 1assignment’ upon a valid trust, and another “upon a void one. The terms used do not, by inevitable “ construction, apply to the instrument, * * they “are satisfied by applying it to the inoperative provision.” He then cites the case of Doe v. Pitcher, (6 Taunt., 363,) upon a statute similarly worded, which is directly in point. In that, Gibbs, Oh. J., said: “I cannot find any words in the act to make the whole deed void.” I may also add, that the statute in question makes the transfer void, not only as to existing but even subsequent creditors, so that the right to avoid it might be acquired subsequently. To *647 make the whole instrument void in such case, would enable the debtor to perpetrate a fraud upon the creditors already secured by incurring new debts. I do not see why, on the same principle, every assignment in trust, at least where there is a possibility of a surplus, could not be avoided by the debtor by acquiring new creditors, and yet it is held not to be capable of being done so. (Wintingham v. Lefoy, 7 Cow., 735; Ely v. Cook, 18 Barb., 612.) That the framers of the statute did not put a trust for the use of the assignor upon the footing of a fraud, is evident from their deeming it necessary to make a separate provision, to render assignments with intent to defraud creditors or any person void. (2 R. S., 131, § 1.)
If the case of Barney v. Griffin (ubi sup.) is to be understood as placing the decision upon the ground that the assignment referred to in it was void under the statute against frauds, (2 R. S., 137, § 1,) it is contrary to the whole current of authority, which makes it only voidable under that against trusts for the use of the assignor. (Hendricks v. Walden, 17 Johns., 438; Goodrich v. Downs, 6 Hill, 438; Strong v. Skinner, 4 Barb., 546; Hooper v. Tuckernan, 3 Saudf., 311; Leitch v. Hollister, 4 N. Y. R., [4 Comst.,] 211.) In Leitch v. Hollister, (ubi sup.,) an assignment was held to be good, with the same provisions, simply because no trustee intervened. I may further remark, that neither in Barney v. Griffin, nor in any óf the cases last cited, was the assignment set aside at the instance, of the parties secured by it.
But even if the omission of any creditor formed good cause for setting aside the assignment in question, as being made with a fraudulent intent under the second provision, (2 R. S., 137, § 1,) the plaintiffs are not in a position to avail themselves of such objection, because they were not the persons intended to be hindered, delayed and defrauded as provided in the statute. That is a personal privilege of whiA no one can avail themselves, except the persons defiwjed or privies with them. But it is urged that the a j^^rs, by subjecting their pro *648 perty to the uncertainty of the action of the creditors preferred for one half, committed a fraud on their other creditors, which entitles any of the latter to set it aside. If this be so, as matter of law, it is very plain that the qualification in the statute of the parties who could avoid such assignment is superfluous and unmeaning, because, in fact, it would amount to rendering an assignment fraudulent as to one creditor equally so against all; and the change of phrase from that in the section prohibiting trusts (2 R. S., 135, § 1) would be unaccountable. Such a construction of the statute clearly should be avoided, if it can be so, by giving effect to every word. But this is not the only difficulty to which such construction gives rise.
The term “void” in the statute, of course means only voidable. (Anderson v. Roberts, 18 Johns., 515.) The only persons whom it was intended, in fact, to prejudice, may confirm it. (Hone v. Henriquez, 13 Wend., 240; Mills v. Argal, 6 Paige, 577; Lawton v. Levy, 2 Edw., 197.) Until they complain, all acts done under it are valid. (Robinson v. Stewart, 10 N. Y. R., 189.) If the omitted creditors had assented to the present assignment, the present plaintiffs would have been barred. The statute, therefore, operated to give a right of election to the party injured, to confirm or reject the assignment, if he assented to it, or ceased to be a creditor by discharging his debt; if there were none such left to be injured, the assignment would clearly not be executed to injure any one bearing the character of creditor. There is no reason why the words of the statute, “persons so hindered, delayed or defrauded,” should not be confined to their plain and natural sense, as meaning those affected directly by the execution of the instrument itself, and not by the possibility of injury by the possible attempts of a third person to set it aside. The intent to hinder or defraud, aimed at by the statute, is only that existing at the time of the ass!«/menfc and embodied in its execution, the effect of whi jflkas only to be prevented by a new conveyance free same vice, (Messonnier *649 v. Kawman, 3 Johns. Ch., 3; Murray v. Riggs, 15 Johns., 571; Hone v. Woolsey, 2 Edw., 289,) and not one to be injurious or harmless at the election of parties other than the assignor. If it were an intent to defraud one set of creditors, it could not be waived by another. If the persons intended to be defrauded, ceased to be creditors, or assented to the assignment, there would be no one prejudiced by it, and others could not avail themselves of an extinguished possibility to overthrow the assignment by the fiction of an intended fraud in law.
If, however, those whom there was no desire or attempt to defraud, could avail themselves of this supposed fraud in law to defeat the assignment, they could deprive those whom there might be an attempt to defraud of all right of electing to confirm it, a right which the statute, as interpreted judicially, intends to leave them. If the doctrine of probabilities is to be taken into consideration, the right and possibility of confirming are as much elements of it as that of overthrowing. It would be extraordinary if a statute which plainly intended to leave a right of election, should be construed so as to take it away, which it would do if every creditor had a right to assail the assignment, whether intended to be prejudiced by it or not. If there is any injury to arise from delay in exercising such right, possibly the party to be prejudiced may compel its exercise. But there is no such injury; the creditor who fears an attack from a defrauded creditor on the assignment, can obtain a judgment, issue execution, file a creditor’s complaint, and put himself on an equality. Even compelling an election is entirely different from breaking up the assignment and excluding preferred creditors from the benefit of their preference, because only part of their debt was secured.
If this assignment contained the provision that the preferred creditors should be paid one-half their debts merely .if they ratified the assignment, that would not enable others to avoid it. The mere addition that, after paying *650 such sums, the residue should be applied to paying other debts, would clearly not make it worse.
Moreover, the question of intent, as to the two classes of creditors, the secured and not secured, would become two questions, to be submitted to two different tribunals, one being of law and the other of fact. The intent to defraud the omitted creditors would be one of fact. But that being once established, the intent to defraud the secured creditors by making an assignment which could be overthrown, would be a question of law solely. This would create two different intents affecting two different sets of creditors, one a question of fact and the other of law, to overthrow the assignment in such case. I do not think the statute intended that result.
Other considerations might be suggested to show the injustice which this doctrine would work, particularly in such a case as this. Here the creditors preferred, for one-half of their debts, in whose exclusion is admitted to be the only meritorious cause for avoiding the assignment, but who have shown no desire to accomplish such a result, as well as all other creditors, are to be postponed to the claims of the eager plaintiffs, who propose to mount on the shoulders of the former to carry off the assets of Graydon, McOreery & Co., but to give them no share of the booty.
It is no light objection to the validity of the principle contended for, that in none of the cases before any of the Courts, in relation to assignments where the question could have arisen, has any counsel been bold enough to advocate it, and no allusion has been made to it by any Court. This Court at General Term, in a recent case, (Morrison v. Atwell, 9 Bosw., 503,) joined with me in laying down the proposition, that no creditor but those intended to be defrauded by an assignment could assail it. The question was discussed on the argument of that case, but the Court seem to have deemed it too plain to require many reasons in support of the decision. Hoiking but the most profound respect for the opinions of my brethren *651 who differ from me now, could have induced me to enter at length into such reasons, which were then fully weighed.
The mere statement of the anomalies arising from such a doctrine appear to me sufficient to repel it.
The power of availing one’s self of an intended fraud on another to set aside an instrument in one’s own favor; of making that an attempt to defraud one’s self, which a third person can render perfectly honest; of depriving a third person of a right of election given by statute, rendering the intent of an instrument dishonest by the possibility of its avoidance by others; and, in fact, working through others, between whom and one’s self there is no privity, by means of their rights and injuries to them, is entirely repugnant to all legal principles applicable to any other case.
It may appear almost superfluous, in this case, to have examined the principle just discussed, since the assignment provides that, after the preferred payments are made, “all other debts and liabilities are to paid pro rata.” That phraseology is much stronger than even that in Taylor v. Stevens, (7 How. Pr., 415,) where the words used were “ other creditors,” and it was held to include all debts. Besides which, it is claimed by the plaintiffs that the preferred creditors released their claims by assenting to a compromise. It is also very plain, that the application of the individual property of the assignors to the payment of the claims of the plaintiffs and other partnership creditors, would not prejudice them, whatever harm it might do to individual creditors.
It is also worthy of notice, that there is no evidence in this case, either that the assigned estate will not yield fifty per cent on all the claims as well as the preferred, or that there are any individual creditors of the assignors. But I cannot subscribe to the principle that the assignment is void for omitting any creditors. If it is void only upon the ground that, by that means, it created a trust for the assignors, the attachments and orders of arrest must be vacated, because they require fraud to sustain them.
*652 A similar answer is to be found to the charge of coercion of their creditors by the assignors. The plaintiffs never were coerced, nor was any attempt made to coerce them into accepting less than the face of their debt. Their claims still remain good, and, therefore, there was no intent manifest on the face of the assignment and compromise to defraud them. The assignors had a perfect right to prefer the creditors in schedule B for the whole of their claims. The only complaint now made is, that they were preferred for only half, in consequence of yielding to a threat not to prefer them if they would not release their claim.
As I understand the law, it leaves to a debtor the perfect control of his property, subject to a liability to be proceeded against personally, for the violation of the act abolishing imprisonment for debt, and to an attachment where he has done any act entitling his creditors thereto, so long as a creditor has not obtained a lien on it. Until that time he may dispose of it, pay any one or more of his creditors, and procure a release from any one for a sum less than the amount of his claim, or make an agreement with one or more of them to pay a certain sum, or divide certain property, or all his property, among them, provided they will release their claims, if he only executes an assignment directly to them as security for any specific sum agreed upon. (Leitch v. Hollister, ubi sup.) It remains to be seen, whether the intervention of an assignee between the creditors and debtor makes the original agreement, as well as the assignment, void. Because, if the latter be a mere performance of the former, both must be void, as illegal, or neither, since the- debtor, in an action against him, by the creditors who had agreed to compromise, to enforce the agreement while it remains in fieri, could set up the illegality of the assignment, if there was any, as a defense. I have already shown that, in such case, the intervention of an assignee makes an assignment void, only when and because it creates a trust for the assignor, and not because it proves a fraudulent intent, which would not exist if it had. been directly to the creditor. The *653 existing and subsequent creditors, against whom the stattute makes such an assignment in trust for the assignor void, clearly could not be the parties whom it was intended to secure, unless the hindrance or delay thereby was such as brought it under the other section of the statute affecting fraudulent conveyances. In the present case, the assignors reserved nothing for themselves, and admitted all their creditors to participate in a distribution of all their property. There was, therefore, no trust reserved for them, or evidence of fraud on the face of the assignment.
If the face of the agreement of compromise be taken into view, in order to establish a fraudulent intent on the assignment, nothing of the kind will be found in it. So far as it has any bearing on the assignment, the subscribers to it mutually agree, on receiving one-half of their debts in a certain time, to discharge the whole, whether they should receive that half by “preference in any assignment, or other general disposition of propertyor by collateral securities or otherwise. A very ordinary form of a compromise agreement, as not even an assignment to a third person, is mentioned. There is no agreement contained therein by the debtors, to make such assignment or give such preference. It rests, for its legal obligation, not on any consideration proceeding from the debtor, but on the mutuality between the creditors. And although an assignment is mentioned as one of the modes of securing the composition, the creditors do not agree to discharge on that alone, unless they should receive the sum specified. If they did not, they remained creditors to the full amount. Besides, it is urged by the plaintiffs themselves that the assignment did not carry out the composition agreement, because Samuel Graydon was preferred for debts which were not confidential.
There is no evidence of the mode in which signatures were obtained to such agreement, or whether any threats were made to the subscribers to coerce them into signing it. Indeed, it is not very plain whether they are claimed *654 to be, by reason of their signing the compromise and being preferred in the assignment, victims of, or participants in, the supposed fraud, coerced into surrendering part of their claims, or aiding their debtors in fraudulently securing half their claims on condition of relinquishing the rest. The only evidence tending that way, is that of Messrs. Hutton, Heiser, Jr., and Swift, who depose that one of the firm (William Graydon) applied to them to make the compromise, which they declined. Heiser alone testifies to anything like a threat; he was told if he did not take the offer, he would get nothing. Eone of those deponents signed it. Hutton testified that the application to him was after the 25th of April, and a few days before the assignment, which Graydon declared to be unavoidable. It is plain, then, that none of the plaintiffs were coerced, nor any one but the parties to the compromise. They, however, do not complain, but entire strangers to them propose to take away the only security they have for half of their debt, because they yielded to the inducement held out by that security to relinquish the other half. I am unable to perceive how they were either victims or accomplices in a fraudulent scheme.
The only question which remains, therefore, is, whether the debtors had a right to prefer, in the assignment, those creditors who compromised, being induced thereto by the fact that they had agreed to accept one-half of their claims in satisfaction of the whole. I do not understand that in recognizing the right of a debtor to make preferences, the law undertakes to penetrate into the motive, farther than to see that it be not an intent to defraud others. A debtor may prefer a creditor so long as he is one, because he is a friend, a relative, a benefactor, because he has promised to procure an employment for him, secure him business, or take him into partnership, or even pay him money, provided he is secured only for the difference between his debt and such sum. Suppose, in this case, the creditors of Graydon, McOreery & Go. had agreed to advance them one-quarter of their debts, if they would secure three- *655 quarters of it in their assignment. Is there anything illegal in that, so long as they are masters of their property, to distribute it among their creditors as they please ? I do not find, in the leading case of Grover v. Wakeman, (11 Wend., 201-203, op. Sutherland, J.; S. C., 1 Am. Lead. Cas., 76,) or any subsequent case, any principle militating against this doctrine. The phrase “ coercing creditors” is apt to mislead us as to the reason why an assignment is void which excludes from its benefits all who refuse to discharge the debtor. In Bellows v. Patridge, (19 Barb., 176,) a creditor was required by the assignment to surrender certain collateral securities or lose his priority. Yet it was held to be within the legitimate power of directing preferences. Gould it be said that if he had been required to relinquish half his claim or lose his preference, instead of surrendering his securities, he would have been any more coerced ? The true reason seems to be, that the assignment itself coerces the creditors into giving a benefit to the debtor; in fact, procures that benefit after the debtor has parted with all control over the property, and yet has protected it, if the assignment is good, against the superior vigilance of a pursuing creditor. While the control of the property is left in the debtor’s hands before judgment, the law leaves him undisputed master of its disposition; and if it be not subject to an attachment, the law must be presumed to have intended to leave him so. There was no difficulty in making the assignment directly to the preferred creditors in this case, and yet is this rendered any more fraudulent by having an assignee ? When the assignment in this case was executed, all coercion was over; there was nothing to be done by the assignee but to distribute the assets as directed. The actual coercion of the release was by means of the compromise, or the inducements held out to execute it, which no Court would set aside merely on that ground. There was no necessity afterward for either threat or promise. Indeed if the only inducement held out to each creditor to release, was a promise to prefer in the assignment for one-half, I do *656 not well see how such promise could be called a threat, or its consequences coercion. The mere power of withholding a preference, allowed by law, would be sufficient means to procure a signature to a compromise. Until the law takes away that power, I cannot perceive that its exercise can be made fraudulent, although for the benefit of the debtor, still less, how it can be said to defraud those upon whom it has never been tried. A general assignment for the benefit of all creditors who shall release the debtor, attacks every creditor, and he who prosecutes his claim to judgment is excluded from all participation, while only those receive anything who release. Such a result makes the instrument itself operate to hinder and delay creditors if sustained, because until it was determined who was to receive, there could be no distribution; besides being itself a threat to those who did not release, that they should receive nothing. It is the instrument of transfer in such case that is declared void; but there is nothing to prevent the debtor himself, while he has control of his property, from promising to secure a creditor for any sum as a composition of his debt, even if by an assig-nment to a third person. Eor is the control of his property to be taken from him by attachment or injunction, in consequence of such promise, which is not one of the causes for furnishing those provisional remedies. But I do not propose to go over this ground any more fully, as I have already given my views upon it at Special Term.
If this instrument of assignment were sought to be declared void, solely because it contains a trust for the assignor, and not because it is made with fraudulent intent, the remarks of Judge Comstock, in Curtis v. Leavitt, (15 N. Y. R., 123, 124,) would be applicable, which makes the part declaring such trust void, leaving the rest to stand; for which he cites Doe v. Pitcher, (6 Taunt., 363,) and other authorities. But the difficulty in such case would be to determine in what part of the instrument the debtors have secured a trust for themselves. *657 Their discharge is rendered necessary in consequence of the preference, not by the assignment, but by a different instrument, made two months before, when they hoped to procure a lease of all their creditors.
The argument would be as strong against the assignment, in this case, if the original agreement had been to release the debtors on their executing an assignment for the benefit of all creditors, equally, and to give no preferences. That would equally operate to coerce the creditors who signed it into giving the release. The fact that by the instrument, when executed, all would be placed on an equality, does not alter the fact of coercion. If every motive which a failing debtor can hold out to his creditor to give him a release is to be construed into coercion, such debtor must in vain strive to escape from the load of his debts by a release.
I cannot see any great end of public policy, or of any particular statutes, to be attained by depriving a debtor of the power of procuring a release from any or all of his creditors, by giving up all he has for that purpose, so long as the law leaves the control of his property with him, with power to make what bargain he pleases with his creditors, provided he ultimately applies all his property to the satisfaction of his debts.
I am aware that the case of Spaulding v. Strang, (32 Barb., 237,) seems to hold a doctrine opposed to that just laid down. But that was put upon the express ground that the agreement to release and the assignment were found at Special Term to be, as matters of fact, one instrument, executed together for one purpose, and they referred, in fact, to each other. It did not appear whether the plaintiffs in that action had not been threatened by the debtor, and were not in other ways affected by the assignment. I should not feel disposed to stretch the doctrine of that case beyond its exact circumstances, from which those in this case essentially differ. There is here no evidence, except from the provision in the compromise itself, that any assignment was expected, much less contemplate *658 ed, when the former was executed. The assignment itself was executed without any concert or understanding with the creditors, and, construed by itself, is not void.
I therefore remain of the opinion that the order at Special Term was right, and should be affirmed, with costs.
Monell, J.
For the purpose of examining the question, I am willing to assume that the compromise paper and the assignment, although executed two months apart, are to be read as if executed at the same time; as being one paper and having the same effect as if incorporated into the same instrument.
In this view it is claimed that the assignment is void, as being intended to hinder, delay and defraud, &c., the creditors of the assignors.
In support of this position, the case of Spaulding v. Strang, (32 Barb. S. C., 235,) decided by Mr. Justice Sutheelaed, at Special Term, and since affirmed by the General Term in the first judicial district, (36 Barb., 310,) is relied on; and if that case can be sustained upon principle or by authority, it is undoubtedly decisive of this case.
The facts were very similar to those in this case. A compromise was signed by certain of the creditors of the assignors, in which they agreed to take fifty per cent of their debts, and providing that if it was not paid in eighteen months, the debtors should make an assignment to an assignee named, giving a preference to the creditors signing the compromise, to the extent of fifty per cent of their debts, they agreeing to discharge the assignors from all liability for the balance. An assignment giving this preference was subsequently made. The conclusion of the learned Justice was, that the assignment, viewed in connection with the previous agreement, on its face was fraudulent and void; 1st. Upon the ground that the assignors thereby intended to reserve or secure for themselves a benefit; 2d. That the whole proceeding, viewed as one transaction, was an attempt to coerce the creditors to enter into the compromise.
*659 It is, perhaps, proper to state, as distinguishing the case before the Court from Spaulding v. Strang, that it is distinctly denied by all the defendants, and not sustained by the plaintiffs, that in soliciting their creditors to sign the compromise, they used any threats or held out any inducements other than those contained in the paper itself. In Spaulding v. Strang, there would seem to have been evidence of some threats or coercion used, for the learned Justice construes their acts into saying, “ sign this and you will get half your debt, but if you do not sign it, you will of course fall into the third class and get nothing.”
The cases cited as sustaining the doctrine intended to be established by this case, are Hyslop v. Clarke, (14 Johns., 458,) Wakeman v. Grover, (4 Paige, 23; S. C., 11 Wend., 187,) and cases in the Vice Chancellor’s Court in the first district.
Hyslop v. Clarke was the earliest case. The assignment provided that if the creditors mentioned in the schedule should respectively discharge the assignors, they should be paid in full, if sufficient for that purpose. If they refused, the trustees were to hold the assigned fund and pay it to such creditors as the assignors might thereafter appoint. The creditors were not parties to the assignment, and had nowhere agreed to release the assignors. The Court say: “ One object evidently was, to coerce the creditors to acquiesce in the terms offered them. If you will release your debts you may participate in the benefits that may result from this assignment, but if you refuse, we will lock up our property indefinitely, in such a way that whether you ever get any part of it, shall depend upon our will and pleasure.”
In Searing v. Brinkerhoff, (5 Johns. Ch., 329,) the assignment contained a condition that the creditors who should receive payments “ should seal and deliver a full and complete discharge of their demands.” In case of a refusal to sign the discharge, there was a resulting trust in favor of the assignors. The Chancellor says: “A power of coercion over the creditor, with the reservation of such *660 a resulting trust to the grantee, in case the coercion should not be successful, was deemed by the Supreme Court, in Hyslop v. Clarke, to be a badge of fraud, and not a fair and lawful assignment.”
The case of Grover v. Wakeman, (4 Paige, 23,) affirmed by the Court for the Correction of Errors, in 11 Wend., 187, is now the leading authority in this State, invalidating assignments containing a condition of release by the creditors. Until the decision of this case the law was unsettled, as all the prior cases had turned more or less upon other and controlling points. At the time of this decision the conflict of decision in the local Courts of the States left us no guide, while they furnished but dim rays of light upon an obscure subject. In Massachusetts, Hew Hampshire, Pennsylvania, Virginia, South Carolina, Alabama and Rhode Island, assignments containing a clause requiring a release were upheld; while in Ohio, Missouri, Connecticut, Maine and Illinois they were held to be void. (1 Am. Lead. Gas., 94, 95.) The assignment in Wakeman v. Grover provided, after paying creditors named in class 1, to pay the creditors named in class 2, or to such of them as should, within three months after a written request of the assignee, agree in writing, under hand and seal, to receive such portion of their debts as could be paid out of the surplus avails of the assigned property, in full discharge of their whole debts due from the assignors. The Chancellor, in 4 Paige, 35, says, “ that Grover & Gunn, knowing themselves to be insolvent, have, without the concurrence of their creditors, made a voluntary assignment of their property to trustees of their own choosing, and have excluded a certain portion of their creditors from any participation in the assigned property, unless such creditors will consent to come in and take their share of the surplus, after paying the preferred creditors, and will discharge the assignors from all further liability, whether their debts are paid or not.” Again he says, (p. 36,) “ It is settled that the insolvent has the right, while his property remains in his own hands, to apply the same to the pay *661 ment of one creditor in preference to another.” When this case came before the Court of last resort, it received a most careful consideration and very deliberate decision. Eejecting the cases in the different States, as well as those in the Supreme Court of the United States, as tending to embarrass rather than aid the Court, that tribunal settled upon principle the law for this State, and it has since been acquiesced in by all the Courts.
The principle thus established is, that such provisions render assignments void, as containing a condition for the benefit of the assignors, by extorting from the fears and apprehensions of the creditors, an absolute discharge of their debts, as a consideration for a partial dividend; that, in doing this, the debtor perverts the power of making preferences to a purpose which it was never intended to cover, and which the principles on which the right to give preference is founded will not justify. The foundation upon which the principle rests is, that, it is an attempt at coercing the creditor into a discharge of the debtor; that it is done without the concurrence of the creditor and after the property of the debtor is placed beyond the reach of the creditor. The learned Judge, Sutiieiilaito, who delivered the opinion of the Court for the Correction of Errors, was careful to place his decision upon the ground of coercion and there being no consent of the creditors; for he expressly recognizes the right of a creditor to make the best bargain he can with his creditor. He says, (11 Wend., 201,) “It has sometimes been said, in answer to this view of the case, that there is nothing immoral or unjust in a debtor, in embarrassed circumstances, and who is unable to pay all his debts, making the best arrangement in his power with his creditors, and giving the largest dividend, or the whole, to those who will settle with him on the best terms; and if he can do this while he retains his property in his oion hands, there is no reason, it is said, why he should not be permitted to do it under the cover of an assignment. * * * But the case is materially changed when the debtor first places his property beyond the reach *662 of his creditors, and then proposes to them terms of accommodation.”
Enough has been quoted, I think, to show, that where an assignment containing a clause requiring a release, is made with the consent of the creditors, especially where the consent is obtained before the assignment is made, and before the debtor’s property is placed beyond the reach of creditors, it is not void. The consent removes the objection of coercion for the purpose of obtaining a benefit to the assignors.
The case of Wakeman v. Grover was followed, in the same Court, by Hone v. Henriquez, (13 Wend., 240,) and an assignment containing a similar clause or condition was held void, on the ground that the assent of the creditors had not been obtained. Chief Justice Savage, in delivering the opinion of the Court, says: “ But if all the «creditors assent to such assignment, and agree voluntarily to take their proportion of the assigned property and discharge the debtor, there is no fraud in such a transaction, and, of course, such an assignment, executed with the assent of all the creditors, would be valid, not void.” The assignment in that case was in trust to pay such of the - creditors as would, on receiving a ratable proportion of the proceeds of the assigned property, release the assignors from their respective debts.
The case of Hastings v. Belknap, (1 Denio, 190,) was an assignment for the benefit of creditors, in consideration of the full and unconditional discharge of the assignors by each of their creditors. The action was replevin, and the Court charged the Jury, that the assignment was on the condition that the creditors should release them; that it was coercive on their creditors, and made to extort a release from them, and was, therefore, fraudulent and void. The release had been previously given or executed, and it was a present absolute assignment for the benefit of all the creditors. The Court say: “This is not an assignment made by a debtor for the benefit of his creditors, upon condition that they, in order to receive the *663 benefit of it, shall discharge him from their demands. * * * To me it appears to be the case of debtors, hopelessly insolvent, yet having some property, being applied to by their creditors to assign it in trust for them, offering to them, as an inducement to do so, to discharge their demands upon condition that such assignment shall be made.”
It is clear, from the above cases, that where the condition of release is agreed to by all the creditors, before the assignment is made or concurred in at the time, it does not render the assignment void. Does it make any differ ence that a few only of the creditors agree to accept a part and release the debtors ? In principle it cannot. The law authorizes preferences, and it allows an assignment to contain the condition of release, if the creditors assent to it. The assignment of the defendant made two preferences; first, to pay the confidential creditors, and, second, the creditors who had signed the compromise paper, then to pay the other creditors. If I am right in my view that the creditors preferred in schedule 2, having previously agreed to take fifty per cent of their debts, the assignment was not void, then it was a valid instrument in all its parts. It provided, after the preferred debts, for the payment of all other creditors of the assignors.
The-error into which the learned Judge fell, in Spaulding v. Strang, was in not distinguishing between -the voluntary act of the creditor in agreeing to take less than his debt, and the coercive step of the debtor in requiring the performance of a condition before the creditor should be entitled to reap any benefit from the assigned fund. The creditors were under no obligation or duty to sign the compromise paper. They could have rejected it, and all their legal rights and suits would have remained to them. The debtors had not disposed of their property, nor placed it beyond the reach of creditors. How, then, can it be said that in thus, of their own accord, agreeing to receive a smaller sum than their debt, and for that being preferred, they have been coerced, against their will, to their injury, and the benefit of the debtors, into a dis *664 charge of the balance of their claims. It seems to me it cannot be. I see nothing immoral or dishonest; nothing indicating a design to cheat or defraud, hinder or delay creditors in their lawful suits, in a debtor embarrassed by his debts, on the brink of bankruptcy, going to his creditors and saying to them, I am about to make an assignment of my property to pay my creditors; I cannot pay all in full, and if you will take fifty per cent of your debts and release me, I will prefer you in my assignment. If the creditors consent to this, they cannot object that the instrument is void. As was said in Hone v. Henriquez, supra, it is their agreement, deliberately entered into, and, as between them, there is no fraud.” And where a part only of the creditors consent to such an arrangement, others who are not parties to it, nor in any wise affected by it, “ are not permitted to say that because it is invalid “ as to others, it is so as to them. The same reason does “not exist.”
But it is said in Spaulding v. Strang, that, taking the transaction together, it would appear that the assignors intended to reserve or secure to themselves a benefit, namely, their ultimate discharge from the debts of such preferred creditors. Grant it. They had a right to secure such a benefit, if the creditors who were to confer it agreed to it; and no one doubts they could agree to it. Besides, relieving them from fifty per cent of a large amount of debt, it swelled the surplus going to other creditors'. I cannot discover that the benefit the assignors were to derive Rom the release from their debts, with the assent of their creditors, was a badge of fraud, or could render their assignment invalid at the suit of creditors at large, toward whom it is not pretended any coercion whatever was used.
The result at which I have arrived is directly in conflict with the decision of the Supreme Court in Spaulding v. Strang; but my convictions are so strong that that case is not supported upon principle nor by authority, that I cannot hesitate to overrule it.
The orders appealed from should be affirmed, with costs.