ALEXANDER SPAULDING, Respondent, *v.* PETER O. STRANG, Assignee, etc., *et al.*, Appellants.

An assignment by an insolvent firm, for the benefit of creditors, in pursu-ance of an agreement between the debtors and certain of the creditors, that the latter shall be preferred in a second class to the extent of fifty cents on the dollar of their claims, on condition, that said preferred cred-itors discharge the firm from all liability upon the balance of their indebt-edness to such creditors, is not void as against creditors not parties to the agreement, and not preferred by the assignment.   *

The distinction between this case and that of *Hyslop* v. *Clarke* (14 Johns. 458), and of *Grover* v. *Wakeman* (11 Wend. 187), discussed in the opinion of PARKER, J.

*John S. James*, for the appellants.

*John H. Reynolds*, for the respondent.

PARKER, J. This action was brought by the plaintiff, as a judgment creditor of the former firm of Bradner & Fur-man, against Gabriel Furman, surviving partner of said firm, and Peter O. Strang, assignee, to set aside, for the plaintiff's benefit, a general assignment, made by said firm, to the defendant Strang, for the benefit of their creditors.

Upon the trial at Special Term, the assignment was held fraudulent and void, as against the plaintiff, and judgment

TIFFANY—VOL. XI.   2

was rendered accordingly. The General Term affirmed the judgment, and the defendants have appealed to this court.

It does not appear, from the findings of the court at Special Term, that there was any fraud in fact, unless it is shown upon the face of the assignment and the agreement in pursuance of which it was executed.

It is found, by the court at Special Term, that, in August, 1854, the firm of Bradner & Furman failed in business, and were unable to pay their debts; and that, on the 16th of November of that year, they entered into a written agreement with such of their creditors as were willing to enter into the same, whereby the creditors who signed the agreement covenanted that they would accept and receive from the firm, on or before the first day of December, in full satisfaction of the indebtedness of the firm to them, the paper of the firm for the amount of forty cents on the dollar, payable in six and twelve months, with satisfactory security — and for ten cents on the dollar, payable in eighteen months without security — *or*, if the firm should be unable to do that, then, in case said firm should, on or before the first day of December, 1854, make an assignment to said Strang, of all their property, preferring therein as first-class creditors, an amount not exceeding $60,000, and preferring the said creditors who entered into said agreement as second-class creditors therein, to the amount of fifty cents on the dollar on their several claims, that they, the said creditors, would, in such case, on the execution and delivery of such assignment, discharge them, the said Bradner & Furman, from all liability for the balance or remainder of their claims against said firm.

It was further found, that, on the first day of December, 1854, the said firm did make and execute to said Strang, an assignment of all their property, in trust to pay all their debts, that said assignment was made in pursuance of said agreement, containing the recital that the said firm "have agreed to assign the property herein referred to for the benefit of their creditors, in the manner hereinafter mentioned,"

and that the same conformed to the agreement in preferring in the first class not more than $60,000; and in the second class, the creditors who had signed said agreement, and them alone, to the amount of fifty *per cent* of their respective claims; that the plaintiff, not having signed the agreement, was not preferred in either the first or second-class. And the court also found, that the agreement and the assignment constituted parts of one and the same transaction.

Taking the agreement and the assignment as one transaction, so far as it is possible to do, it is shown that the creditors who signed the agreement were preferred in the second class, *in consequence* of their having agreed to release fifty *per cent* of their claims against the assignors. And this is all that is shown on the face of the papers, or by any finding in the case, tending in any respect to invalidate the assignment. It is true, that the learned judge before whom the cause was tried, in his opinion delivered at the Special Term, states one of the grounds of his conclusion that the assignment is, on its face, fraudulent and void as to the plaintiff, to be "that the whole proceeding viewed as one transaction, was an attempt to coerce the creditors to enter into the compromise." There is no such fact in the findings, and no such inference can be legitimately drawn from the papers themselves, though taken in connection with the fact, which is found, that the agreement was offered to the creditors for execution by Bradner & Furman, and signed by the creditors whose names are subscribed thereto, at their instance and request. Neither is there any thing in the evidence tending to such a conclusion. The bare fact that the assignors presented the agreement to the creditors, and requested them to sign it, and that, in pursuance of such request, they did sign it, surely does not warrant the conclusion that threats, or other means of coercion, were used, or any "moral duress," to procure its execution. The case must rest upon the fact above alluded to, that the creditors who signed the agreement were preferred in consequence of their having agreed to release the assignors to the amount of fifty per cent of their claims against them.

Does this fact render the assignment fraudulent and void as against the plaintiff?

It is true, that, by the arrangement, a benefit to the assignors — the release from a portion of their debts — is provided for. But this, unless it is in some way at the expense, or to the detriment, of creditors, does not, I apprehend, invalidate the assignment. Unless an assignment devotes the property assigned to illegal uses or trusts, or, by its provisions, operates to hinder, delay or defraud creditors, no ground is furnished by the assignment itself, upon its face, for setting it aside as fraudulent and void as against creditors.

It cannot be pretended that there is, in the assignment under consideration, any unauthorized use or trust created. The whole property is placed in the hands of the trustee to sell and dispose of, and apply the avails to the payment, in a specified order, of all the debts of the assignors, except fifty per cent of the debts owing to a certain class of creditors, who consent to release the assignees from the payment thereof.

This release does not operate to reserve any portion of the property to the use of the assignors, but whatever is thus saved is to be applied to the benefit of the rest of their creditors.

The delay and hindrance to creditors, incident to the bare fact of an assignment to trustees, is not sufficient to invalidate the assignment (*Nicholson* v. *Leavit*, 2 Seld. 516; *Townsend* v. *Stearns*, 32 N. Y. 213); and the transaction in question produces no other hindrance or delay.

The case is supposed by the respondent, and was held by the court below, to be within that class of authorities which have declared fraudulent and void assignments in which certain creditors were preferred, *on condition* of their subsequently executing releases of their respective demands.

The law is undoubtedly well settled that such assignments are *mala fide* on their face, and void as against creditors. (*Hyslop* v. *Clarke*, 14 Johns. 458; *Grover* v. *Wakeman*, 11 Wend. 187.) The reason is obvious. It is a clear attempt, by the debtor, to coerce his creditors to accede to his terms,

and a withholding of his property from them to a greater
or less extent, unless they do so accede; this is a hindering
and delaying of creditors which the statute prohibits. As
was said by the court in *Hyslop* v. *Clarke*, "It does not
actually give a preference, but is, in effect, an attempt on
the part of the debtors to place their property out of the
reach of their creditors, and to retain the power to give such
preference at some future period. * * If they can keep
it locked up in this way in the hands of trustees, and set
their creditors at defiance for three months, they may do so
for three years, or for any indefinite period."

The case of *Grover* v. *Wakeman* is a leading case on the
subject. In that case there was a provision in the assign-
ment for a preference to creditors in the second class, who
should, within three months after being required in writing
by the trustees so to do, agree in writing, under seal, to
receive from the trustees such proportion of their debts
respectively as could be paid by the avails then remaining in
the hands of the trustees, in full discharge of their respect-
ive claims and demands against the assignors. The Court
for the Correction of Errors held, that such provision rendered
the assignment void. The grounds of that decision appear in
the opinions of Judge SUTHERLAND and Mr. Senator TRACY.

Judge SUTHERLAND, after remarking upon the right of an
insolvent debtor to give preferences in his assignment, pro-
vided he devotes all his property to the payment of his debts,
without any reservation or stipulation for his own advantage,
says: "But when, instead of directly distributing his prop-
erty among his creditors as far as it will go, he *places it
beyond their reach* by an assignment, not merely for the pur-
pose of saving it from one particular creditor, to be given to
another, or to be equally divided among all, but for the pur-
pose of enabling him to *extort from some or all of them, an
absolute discharge of their debts,* as the *condition* of receiving
a partial payment, he perverts the power to a purpose which
it was never intended to cover, and which the principle, on
which the right to give preferences is founded, will not
justify.

The objectionable feature of the assignment in that case, and the distinction between it and the case at bar, will appear more clearly by referring to the remarks of the same learned judge, in his further discussion of the question. "Parties," he says, "not under legal disabilities, may make such contracts as they please, and if they are supported by a consideration, and there is no fraud in the case, they will not be disturbed. If a debtor, therefore, with his property *in his own hands,* and open to the legal pursuit of his creditors, can satisfy them that it is for the interest of any of them to accept 2s. and 6d. in the pound, and give him an absolute discharge, there is no legal objection to it; they treat upon equal terms; the ordinary legal remedies are not obstructed. But the case is materially changed when the debtor *first* places his property beyond the reach of his creditors, and then proposes to them terms of accommodation. He obstructs their legal remedies, hinders and delays them in the prosecution of their suits by putting his property into the hands of trustees, with the view of getting an absolute discharge from his debts, and exempting his future acquisitions from liability."

Mr. Senator TRACY puts forth more prominently and exclusively the effect of the provision to *delay* and *hinder* creditors *for the benefit of the assignor,* as the ground on which he would declare the assignment fraudulent and void. After adverting to the provision which gives a conditional preference to certain creditors, he says: "This appears to be a positive delay of this class of creditors, by placing the property out of the reach of their legal pursuit, and in a condition that it could not be distributed within any certain time, nor otherwise, except at the discretion of the trustees. * * Here the creditors are to be delayed in receiving property which undeniably belongs to them the minute it comes to the hands of the trustees. For whose benefit is this delay? Not for the creditors, for they will get no more after they shall assent, or refuse to assent, to the conditions proposed, than they would get immediately if there had been no such condition. The delay is manifestly to benefit the debtors, in

order that they may secure from it an advantage to which they have no rightful claim. * * * If the debtors had no right to lock up the property in the hands of their assignees until the creditors would execute releases, what right had they to lock it up in their hands until the assignees should choose to ascertain that the creditors would not execute releases? The principle of the delay is the same in one case as the other."

In the case at bar, neither of the elements of fraud for which the assignment in that case was held void, appear. There is no placing of the property of the debtors in the hands of the assignee, beyond the reach of their creditors, and *then* proposing terms of accommodation; no making of the release a *condition* of the preference, nor does the provision in question impose any hindrance or delay upon creditors.

Giving the respondent the full benefit of the finding that the agreement and assignment are but parts of one transaction, it is impossible to make the transaction, like that in *Grover* v. *Wakeman,* an assignment with a *conditional* preference; the imposing of which condition, of itself, necessarily produces delay in the distribution of the avails of the property among the creditors. Here, the terms on which creditors would release were agreed upon, while the property was in the hands of the debtors, and within the reach of the creditors, without any coercion or duress; and the assignment was in pursuance of such agreement. It is, in respect to the provisions complained of as fraudulent, in effect (if any effect is given to the agreement) a composition deed, binding both upon the assignees and the creditors of the second class. There can be no allegation, surely, that as against these creditors, the provision is fraudulent. It is what they have consented to and agreed for (*Hone* v. *Henriquez,* 13 Wend. 240; *Rapelee* v. *Stewart,* 27 N. Y. 310), and I am quite unable to see how it is fraudulent as against the plaintiff, or any other creditor of the assignors.

The view above taken is supported by the case of *Belknap* v. *Hastings* (1 Denio, 190), in which — insolvent debtors

having assigned their whole property to trustees for the payment of their debts, "in consideration," as stated in the assignment, "of the full, final, absolute and unconditional discharge and release of the undersigned by each and every of their creditors, of and from all manner of action and actions," etc.—the New York Common Pleas, upon the trial, charged the jury that the assignment was upon the condition that the creditors of the assignors should release them, and was therefore intended to coerce the creditors and extort from them a release, and that it was partial, and therefore void. Upon error to the Supreme Court this was held erroneous. The court say: "The court below charged that the assignment was fraudulent and void, because it was *conditional*, to wit: that Jones & Marcy's creditors should release; that it was coercive on their creditors, and made to extort a release. In terms it was absolute, and not conditional. The consideration of the assignment was a release already given or executed, and it was a present absolute assignment for the benefit of all their creditors. This is not an assignment made by a debtor for the benefit of his creditors, *upon condition* that they, in order to receive the benefit of it, shall discharge him from their demands;" and the judgment was reversed. See also *Powers* v. *Graydon* (10 Bosw. 630).

The respondent insists that the appellants took no sufficient exception to the conclusions of law, arrived at by the court, to entitle them to question their correctness. In this, the respondent is clearly mistaken. The case states, that, "on the 1st day of August, 1860, the court rendered its decision in writing, as will fully and at large appear in the copy of the same, contained in the judgment roll herein, and the defendants' counsel thereafter duly excepted to all and every the conclusions of law in said decision and judgment contained, to wit;" then setting forth the substance of each conclusion of law stated by the court in the decision. That, in the specifications of exceptions, the more full and specific language of the judgment is adopted, rather than that of the decision, cannot prejudice the exceptions, since they specify

and point out each conclusion of law, though not in the precise language of the decision. The provision of the statute under which the exceptions were filed is as follows: "For the purpose of an appeal, either party may except to a decision on a matter of law arising upon such trial within ten days," etc. (Code, § 268, subd. 1.) The "matter of law" is sufficiently excepted to if *pointed out with certainty* in the exception, though in language different from that in which it is stated by the court as referee.

I think the judgment of the court below is erroneous, and that it should be reversed.

Judgment reversed.